UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
:
BENJAMIN M. LAWSKY, Superintendent of    :
Financial Services of the State of New York,    :
:
                         Plaintiff,    :    No. 14-CV-_____  (____)
:
      - against -    :
:
CONDOR CAPITAL CORPORATION    :
and STEPHEN BARON,    :
:
                       Defendants.    :
:
---------------------------------------------------------------- x

### DECLARATION OF BRIAN MONTGOMERY
### IN SUPPORT OF PLAINTIFF'S MOTION FOR
### *EX PARTE* TEMPORARY RESTRAINING ORDER
### AND PRELIMINARY INJUNCTION

Pursuant to 28 U.S.C. § 1746, BRIAN MONTGOMERY declares as follows:

1. I submit this declaration in support of Plaintiff's Motion for an *Ex Parte* Temporary Restraining Order and a Preliminary Injunction against Defendants Condor Capital Corp. ("Condor") and Stephen Baron. This declaration is based on my personal knowledge and my review of the documents discussed herein.

2. I am an associate counsel in the Financial Frauds and Consumer Protection Division of the New York State Department of Financial Services (the "Department").

**Condor Capital Corp.**

3. Defendant Condor is a sales finance company that acquires and services subprime auto retail installment contracts, which are commonly referred to as loans. "Subprime" or "non-prime" borrowers generally have inadequate credit or resources to borrow from "prime" or "near-prime" lenders, or otherwise have a high risk of non-payment. Subprime customers are

particularly vulnerable to harm from unsound lending and business practices because of their personal circumstances.

4. According to Condor's 2013 annual report, which was submitted to the Department on or about March 13, 2014, Condor acquired more 3,000 loans to New York state residents, with total outstanding balances of more than $55 million, in 2013. At the end of 2013, Condor held more than 7,000 loans to New York state residents, with total outstanding balances of more than $97 million.

5. In total, Condor's 2013 loan portfolio contained aggregate outstanding loans of more than $300 million nationwide.

6. For the year ending December 31, 2013, Condor reported net after-tax income of approximately $7 million on operating income of approximately $68.7 million.

7. As explained in the Department's Examination Manual for Sales Finance Companies, because Condor provides its customers with the means to obtain consumer goods – i.e., automobiles – it is subject to state and federal consumer protection laws, including fair lending, fair debt collection, truth in lending, privacy, credit reporting, and abandoned property laws.

## The Department's Examinations of Condor

8. I have reviewed the Department's files for the examinations of Condor in 2007, 2010, and 2014.

9. In connection with the Department's 2007 and 2010 examinations, Condor represented to the Department that it had filed annual unclaimed property reports with the New York State Comptroller's Office for calendar years 2007, 2008, 2009, and 2010, each of which stated that Condor held no unclaimed property of others, such as funds owed to customers.

2

10. Following the Department's 2007 examination, Condor submitted a letter dated November 18, 2008 acknowledging receipt of the Department's examination report and stating that "this audit criticizes the existence of a small lending business." The letter also asked whether the Department is "intentionally discriminating against a small business?" Condor also wrote that "if you are going to allow a small business to hold a lending license [...] you cannot put upon [sic] economic inefficiencies that preclude its existence."

11. Additionally, Condor submitted a letter dated April 17, 2009 discussing various outstanding issues and representing that defendant Stephen Baron is responsible for reviewing all of Condor's financial information, formulating and implementing the company's loan origination policy, and overseeing the company's general operations.

12. In continued correspondence, Condor rejected or ignored nearly all of the findings from the Department's 2007 examination and refused to comply with the Department's written directives to institute proper policies, procedures, and controls.

13. Following the Department's 2010 examination, Condor submitted a letter dated June 11, 2013 representing that defendant Stephen Baron has "constant" meetings with management personnel.

14. In a letter dated August 28, 2012 regarding open issues from the Department's 2010 examination, Condor represented that although New York State no longer required the filing of negative unclaimed property reports, Condor's employees understand that any unclaimed funds should be reported to the accounting department so that Condor can file the necessary report.

15. In continued correspondence, Condor again rejected or ignored nearly all of the findings from the Department's 2010 examination and refused to comply with the Department's written directives to institute proper policies, procedures, and controls.

16. In November 2013, the Department received information indicating possible wrongdoing by Condor, including allegations of ongoing theft of customers' funds since the company's inception in 1996. Shortly thereafter, the Department sent examiners to Condor's offices to inspect its books and records. Examiners returned to Condor's offices in January 2014 to perform a routine safety and soundness examination.

17. While the 2013 and 2014 examinations are not yet complete, it is clear to the Department that immediate action and court intervention are necessary to protect the interest of Condor's customers to prevent future, irreparable harm.

**Customer Complaints**

18. A person who wishes to file a complaint related to his or her dealings with a sales finance company like defendant Condor can do so in a number of ways. For example, the Department's website, http://www.dfs.ny.gov/consumer/fileacomplaint.htm, allows members of the public to submit complaints and supporting documentation using an online portal. Customers may also file complaints with the Federal Trade Commission and the Better Business Bureau. The Federal Trade Commission also maintains a database of complaints filed with various local, state and federal agencies, including the Consumer Financial Protection Bureau.

19. I requested documentation of all consumer complaints filed against Condor through the Department's website and the Better Business Bureau, and all consumer complaints filed against Condor maintained in the Federal Trade Commission's complaint database. I received approximately 200 complaints.

20. These complaints alleged a host of unfair, deceptive, and abusive practices by Condor, which fall into five general categories.

21. First, a number of customers alleged that Condor engaged in unfair, deceptive, or abusive debt collection practices. For example:

    a. One customer stated that, in the course of attempting to collect on her loan, Condor had contacted a friend who had served as a reference for the customer's loan application and told the friend that Condor was going to repossess the vehicle because of late payments. The customer also wrote that her account was current, but Condor had failed to credit her payments properly.

    b. Another customer, who is a disabled veteran, stated that Condor attempted to repossess his car when his loan was current. Although Condor claimed that the customer was three months behind on his payments, the customer said that he made timely payments and that his bank records show that Condor cashed his checks.

    c. A customer alleged that Condor engaged a third-party debt collector who harassed and threatened his elderly parents. The customer claims that the collector made repeated phone calls to his parents, left notes on their mailbox and cars, and threatened to send the sheriff to their property. This conduct continued despite the customer's request that Condor stop.

    d. A customer stated that Condor sent her harassing letters and made phone calls threatening to repossess her vehicle because of late fees and interest payments. Condor also refused to provide a breakdown of the interest and amount due.

22. Second, a number of consumers complained of unfair, deceptive, or abusive credit reporting practices. For example:

    a. One customer alleged that Condor informed him by letter that it had reported to credit reporting agencies that he had missed his October, November, and December 2013 payments. The customer stated that he in fact has copies of money orders evidencing payments made in November, December, and January 2014.

    b. A customer stated that Condor incorrectly reported to credit reporting agencies that he was 90 days late on his loan when his payments were in fact current. The customer claimed that he has tried to contact Condor about this issue but it was unresponsive. In addition, the customer stated that he is an active duty member of the military and thus entitled to reduced payments under the Soldiers and Sailors Act. He stated that Condor refused to reduce his payment for over a year and that when Condor finally reduced his payment, it refused to make the reduction as of the date of his original request.

    c. A customer stated that despite instructing Condor to debit her loan payments from a new bank account, Condor continued to debit her old account. However, the customer did not maintain funds to cover the payments in her old account, and she incurred insufficient funds fees totaling $210. The customer claimed that Condor agreed to refund the fees but never did. The customer also stated that Condor reported the $210 to credit reporting agencies as a late payment.

    d.    A customer stated that Condor incorrectly reported thirteen late payments to credit reporting agencies. The customer unsuccessfully attempted to resolve the inaccuracies for over six months. The customer also claimed that Condor provided inconsistent information concerning the amount of his payment, and then charged him fees for insufficient funds. Condor promised to resolve the issue but never did.

    e.    A consumer stated that his credit report incorrectly includes a loan from Condor. The consumer claims that he has never taken out a loan from Condor, but, as he and his father have the same name, the loan may be his father's. The consumer disputed the loan but it has not been removed from his credit report. His credit report now states that the original loan amount was $23,000 and the current balance is $131,500.

    23.    Third, approximately twenty customers alleged that Condor improperly assessed late fees and charges on their loan accounts. For example:

    a.    One customer complained that Condor improperly charged her late fees despite making on-time payments. The customer claimed that her account fell into arrears because Condor began deducting late fees from her monthly minimum payments. She said she never received notice from Condor that her payments were late or that Condor was deducting late fees from her payments.

    b.    Another customer complained that Condor charged late fees even though her loan was current. The customer stated that she has bank statements showing that her payments were up to date.

24.     Fourth, approximately ten customers filed complaints relating to Condor's failure to adequately acknowledge payments and other billing inaccuracies. For example:

    a.     One customer stated that Condor has improperly charged her for late payments. The customer said that she missed a payment in 2008, but she was never notified that she would incur late fees for that one payment every month for years. She also stated that the amount Condor claimed she owed was different each time she contacted Condor.

    b.     A customer stated that Condor called her and incorrectly claimed that she missed her October 2012 payment. The customer had to provide Condor three different versions of proof that the payment had been taken directly from her account several days prior to the phone call. Condor also made a disparaging remark about the customer's credit score when she threatened to take her loan to a credit union.

    c.     A customer complained that Condor did not credit a payment she made, which resulted in improper late fees. The customer asked Condor to provide her payment history, but Condor did not send it to her.

    d.     A customer stated that Condor did not apply her payments correctly and that a Condor representative was rude and hung up on her when she called to fix the problem. The customer stated that she has receipts from Western Union demonstrating her on-time payments.

25.     Finally, approximately fifteen consumers filed complaints alleging that Condor made unauthorized charges to their credit cards or unauthorized debits from their bank accounts. For example:

a.  One customer stated that she cancelled automatic debiting from her account. The customer followed up with Condor shortly thereafter to make sure they had received the cancellation fax and Condor confirmed receipt. The customer discovered a few months later that Condor had continued to debit her bank account, causing overdrafts and overdraft fees. After the customer provided documentation from the bank, Condor promised to refund the charges incurred but failed to do so.

b.  A consumer stated that she had previously used her debit card to make a one-time payment by phone for her son-in-law's loan. She claimed that Condor debited an additional $260 from her bank account despite the fact that she does not have an account or loan, and it refused to return the money.

c.  A consumer stated that she had used a debit card to make a one-time payment on her daughter's loan, but Condor continued to charge that debit card, causing overdraft fees. The consumer claimed that she never gave Condor permission to continue charging the card.

      d.    A customer stated that he contacted Condor to set up a deferred payment schedule. The customer made a payment online following the conversation, but Condor then took an additional payment from his account without his permission. As a result, his bank account had a negative balance of $600.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 22, 2014 at One State Street, New York, NY.

                                                      /s/ Brian Montgomery
                                                          Brian Montgomery

Filed by:    FRIEDMAN KAPLAN SEILER &
                    ADELMAN LLP
             Eric Corngold
             Anne E. Beaumont
             Christopher M. Colorado
             Raina L. Nortick
             7 Times Square
             New York, NY 10036-6516
             (212) 833-1100

             *Attorneys for Plaintiff Superintendent of Financial Services*

             NEW YORK STATE DEPARTMENT OF
                    FINANCIAL SERVICES
             Joy Feigenbaum
             Nancy I. Ruskin
             One State Street, 19th Floor
             New York, NY 10004-1511
             (212) 709-3500

             *Of Counsel*