UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------- x
BENJAMIN M. LAWSKY, Superintendent of Financial
Services of the State of New York,

        Plaintiff,

        v.

CONDOR CAPITAL CORPORATION and STEPHEN BARON,

        Defendants.

------------------------------------------- x

Case No.: 14-CV-2863 (CM)

# MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Defendants Condor Capital Corporation ("Condor") and Stephen Baron (together with Condor, "Defendants"), by and through their undersigned counsel, respectfully submit this Memorandum of Law in Opposition to the Motion of Plaintiff Benjamin M. Lawsky, the Superintendent of Financial Services ("Plaintiff" or "DFS") for Preliminary Injunction (the "Motion").

## PRELIMINARY STATEMENT

In this Motion, DFS has asked this Court to shut down Condor, to seize its money and other assets, and to lay off more than 100 employees. The government asks the Court to take this drastic measure despite the fact that there has been no discovery, Condor has had no chance to cross-examine witnesses proffered by the government, nor has it had an opportunity to mount a defense to the merits of this case. In fact, DFS has inhibited Condor from mounting a defense, by taking hold of Condor's offices and refusing to permit it access to its records without supervision by the DFS. Indeed, in the past three days, DFS has refused to permit Condor to make payments to its customers, and obstructed attempts to pay its employees.

This Motion and the conduct of DFS represent an extraordinary overreach by the government. A judgment at trial in this action will render trial on the merits meaningless. As set forth more fully below, the motion to cease issuing new loans, and to appoint a receiver must be denied.

## BACKGROUND FACTS

Condor is a New York-based sales finance company that specializes in financing sub-prime automobile loans. Condor was founded in 1994 and became licensed by the New York State Banking Department as a sales finance company in the State of New York in 1996. Defendant Stephen Baron is the chief executive officer and sole owner of Condor, and Condor

1

currently has approximately 116 employees. Condor works with automobile dealers in approximately thirty different states to provide financing for "subprime" or "non-prime" customers who cannot obtain automobile loans with prime lenders. The automobile dealers with whom Condor works submit credit applications from potential automobile purchasers to one or more possible lenders, such as Condor, who then provide the dealers with a quotation for the terms of the requested loan. The automobile dealers then make the loan and assign it to the selected lender or finance company.

Because Condor's customers are generally classified as "subprime" or "non-prime," meaning that they lack adequate credit or resources to borrow money to finance the purchase of an automobile, Condor views itself as providing an invaluable service to a large population of people who would otherwise not be able to own an automobile – a necessity in many parts of the country. Condor currently holds more than 8,000 such loans to New York State residents, who if it weren't for the services provided by lenders such as Condor, would not be able to own their own cars.

Condor provides its customers with several options for accessing account information relating to their loans. Use of Condor's website to make payments or access loan-related information such as account balances and payment history is completely voluntary. Not all of Condor's customers use the web portal or rely on Condor's website for loan-related information. Condor also provides customers with the option to access their loan information by calling the toll-free customer service number and speaking with a customer service representative. Further, Condor's website is not the only way that Condor's customers can access their account information or find out about the presence of a positive credit balance. The fact that a customer's account information may not be available through Condor's website does not make it

impossible for a customer to obtain information about his or her loan or to detect a positive credit balance.  Condor has never actively concealed from its customers the existence of positive credit balances nor has Condor ever deceptively programmed its customer-facing web portal to shut down a customer's access to his or her loan account.

Condor takes precautions to protect its customers' personal information.  Condor's website uses a secure SSL (Secure Sockets Layer) certificate from Verisign. VeriSign is the leading SSL Certificate Authority enabling secure e-commerce and communications for Web sites. Verisign is the trusted mark of high assurance for Internet security and enables the strongest SSL encryption available to every site visitor.  None of Condor's more than 8,000 New York State customers has ever had his or her private and confidential financial information stolen from Condor's website or from Condor's offices.

If Condor is unable to issue new loans, Condor will cease existing as a going concern.  Condor does not make direct loans to customers.  Instead, it issues loans through auto dealerships which permit the dealers' customers to buy new loans.  In the absence of new loan originations, Condor will lose all of its existing relationships with its network of dealers.  IF DFS's motion is granted, Condor will be forced to immediately lay off approximately 70 employees -- the underwriters, funders, or other people who work on this side of the business.  Condor would be reduced to serving merely as a collection agent on its existing, amortizing portfolio, and the only employees needed would be collectors and a few support people.

## ARGUMENT

**A. INJUNCTION SEEKS ULTIMATE RELIEF, AND SHOULD NOT BE GRANTED**

As set forth above, if the Motion is granted, Condor will be forced to cease operating. Therefore, even if Condor succeeds after a trial on the merits of Mr. Lawsky's action, and Condor will have lost its business, with no avenue for remedy.

It is well-settled that, where, as here, the preliminary injunction will make it impossible to render a meaningful remedy to a defendant who prevails on the merits at trial, then the plaintiff is set to a higher standard. *Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.,* 60 F.3d 27, 35 (2d Cir. 1995); *Doe v. National Bd. Of Podiatric Medical Examiners*, 2003 WL 21403698 at *3 (S.D.N.Y. 2003) (plaintiff's preliminary injunction request denied because plaintiff did not meet the heightened standard applied in part because the preliminary injunction would grant full relief that could not be undone, and in part because it was a mandatory rather than prohibitory injunction); *Forest City Daly Housing, Inc. v. Town of North Hempstead*, 175 F.3d 144, 150 (2d Cir. 1999) (plaintiffs who were seeking a preliminary injunction could not meet the heightened standard of likelihood of success imposed because the motion would have granted substantially all the relief sought).

Plaintiff contends that it is not required to meet even the minimal standard of likelihood of success on the merits; it has made no effort to justify granting it all of the relief requested in this action less than one week after the Complaint was filed.

**B. EVEN IF PROVEN AFTER TRIAL THESE FACTS DO NOT WARRANT APPOINTMENT OF A RECEIVER**

With respect to that actual misconduct alleged, these matters can be easily cured by Condor. DFS contends that Condor has not issued refunds to customers with overpayments in

4

their accounts and that Condor does not safeguard its customers personal information sufficiently. DFS has not even come close to alleging sufficient facts that would warrant the appointment of a receiver or the winding down of Condor's twenty year business. Condor has proposed while the case is proceeding to have an independent monitor to ensure the safeguarding of the customer's data, and, as noted in DFS's complaint, has in fact already begun refunding overpayment amounts. Under these circumstances, no receiver is required.

Federal courts have the power in equity to appoint a receiver in order to protect a party's interest in property. Fed. R. Civ. P. 66. The appointment of a receiver is considered an extraordinary remedy and should be utilized only where clearly necessary to protect an interest by the plaintiff in property where the rights over that property are in dispute. In the instant case, the lesser remedy of an independent monitor is available. *See Ferguson v. Tabah*, 288 F.2d 665, 674 (2d Cir.1961) (receivership is a "drastic remedy" to be imposed "only where no lesser relief will be effective"); *see also Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, (8th Cir. 1993).

The following factors are considered relevant to establishing the need for a receivership: fraudulent conduct on the part of defendant; the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; the inadequacy of the available legal remedies; the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and, in more general terms, plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property. 12 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2983 (2d ed. 1987).

Plaintiff alleges that appointing a receiver is necessary, but none of the factors considered relevant to establish the need for receivership apply in this case. The first factor against appointing a receiver is the lack of fraudulent conduct on the part of Condor. Plaintiff alleges that Condor has falsely represented to its customers and to the Department that none of its customers has a positive credit balance when in fact they did. Plaintiff also claims that Condor knowingly misstated the contents of the account.

However, Plaintiff's claim is refuted by his own brief. According to Plaintiff, Condor's controller told the Department that it was Condor's policy not to refund the positive credit balance unless specifically requested. At worst, this demonstrates a policy at odds with the Department's regulation, not fraudulent conduct. For the purposes of appointing a receiver, a mistake cannot be the same thing as fraud. The appointment of a receiver is considered an extraordinary remedy and should be utilized only where clearly necessary to protect an interest by the plaintiff in property.

The second factor against appointing a receiver is the relative surety that property, potentially earmarked for Plaintiff, is in no danger of being lost, concealed, injured, diminished in value, or squandered. Condor is a profitable financial company, and is committed to its 116 employees which depend upon the continuation of Condor as a going concern. There is no reason to suspect that Condor's assets will be wasted to avoid litigation. Plaintiff does not allege any fact which should lead the court to determine that Condor's property is in any danger. In fact, the appointment of a receiver will squander Condor's value by winding up the company. The best way to protect the assets sought by Plaintiff is to protect Condor as an operating finance company.

The third factor against appointing a receiver is the adequacy of available legal remedies. The most appropriate legal remedy is a refund to any harmed Condor customer. In fact, Condor has already begun rectifying its mistake by refunding over $40,000 to 410 customers. The fourth factor against appointing a receiver is the probability that Condor will bear a greater injury if a receiver is appointed than Plaintiff would if the appointment is denied.

If a receiver is appointed in this case, Condor will be wound up and will cease to exist as a going concern. This is the ultimate injury for a company. Plaintiff, as noted above, will suffer no injury if the appointment is rejected; he will be in a stronger position to protect his property claim. The balance strongly weighs in favor of Condor. The fifth factor against appointing a receiver is the slim chance of Plaintiff's success in the action. Plaintiff brings, for the first time, an action by the Superintendent of Financial Services of the State of New York alleging violations of the federal Dodd-Frank Wall Street Reform and Consumer Protection Act against an auto-lender. Success in a new action before the court is speculative, and is insufficient to warrant the extraordinary remedy of appointing a receiver. Finally, Plaintiff will not suffer an irreparable injury to his interests in the property if the appointment is rejected. Condor will continue operations as a finance company. Nothing about this case suggests that Plaintiff will be irreparably harmed by delay.

Under these circumstances, a receiver should not be appointed. *Rosen v. Siegel,* 106 F.3d 28 (2d Cir. 1997) (receiver is inappropriate because the worried about conflict of interest was counteracted by the court's involvement in the case); *Prudential Ins. Co. of America v. Hilton Hotels, Corp.*, 95 Civ. 5575, 1995 WL 758781, (S.D.N.Y. Dec. 21, 1995) (motion to appoint a receiver denied where fraudulent activities alleged were not severe enough to warrant the extraordinary remedy.

## CONCLUSION

If Plaintiff succeeds in his motion, he will shut down a twenty-year company with more than 100 employees based on untested allegations in an *ex parte* motion that even if true would not call for a winding down of the company. It is well-settled that appointment of a receiver is a drastic remedy, and -- if Defendants succeed in their defense to this claim, they will have no remedy after trial. Plaintiff's Motion should, therefore, be denied.

Dated: April 28, 2014
      New York, New York

By:   /s/ Leah Mary Campbell_____

Michael Rosensaft
Leah Mary Campbell

KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, New York 10022-2585
(212) 940-8800

*Attorneys for Defendants*