# EXHIBIT O

# SUBORDINATION AGREEMENT

THIS SUBORDINATION AGREEMENT ("Agreement") is dated effective as of October 12, 2006 by and among Barco Auto Leasing Corp. ("Subordinate Creditor"), Condor Capital Corp. ("Company") and Wells Fargo Financial Preferred Capital, Inc., as agent (in such capacity as agent, "Senior Creditor") on behalf of the Lenders (as defined below).

## RECITALS:

Senior Creditor and Lenders (as defined below) will extend credit and other financial accommodations to Company pursuant to that certain Amended and Restated Loan and Security Agreement dated as of even date herewith (as amended, restated, modified and supplemented from time to time, the "Loan Agreement") by and among Company, Senior Creditor, and the financial institutions a party thereto as lenders from time to time (collectively, the "Lenders"). Senior Creditor and Lenders are unwilling to extend credit and other financial accommodations to Company unless, among other requirements, the parties make the following declarations and enter into the following agreements. To induce Senior Creditor and Lenders to do so, the parties hereby declare and agree as follows (capitalized terms which are (a) defined in the Loan Agreement, (b) not redefined herein and (c) used in this Agreement having the same meanings here as there).

## AGREEMENTS:

In consideration of the premises and the mutual agreements herein set forth, Company, Subordinate Creditor and Senior Creditor hereby agree as follows:

1. As used in this Agreement, and in addition to the definitions stated above, the following terms have these meanings:

   a. <u>Senior Debt</u> means all debt now existing or hereafter created by Company to Senior Creditor and Lenders, whether direct or indirect, primary or secondary, joint or several, fixed or contingent and whether originally payable to Senior Creditor or any Lender or to a third party and subsequently acquired by Senior Creditor, or such Lender and whether evidenced by notes, application for or agreement for reimbursement of advance under letter of credit, open account, overdraft, endorsement, surety agreement, guaranty or otherwise. The parties expressly declare and acknowledge that Senior Debt includes, without limitation, all debt now or hereafter evidenced by the promissory notes executed by Company pursuant to the Loan Agreement and all renewals, extensions, rearrangements, refundings, increases, modifications, and replacements of such notes (the "Notes"), and all debt and obligations arising under or incurred pursuant to the Loan Agreement. The Senior Debt shall include amounts accruing subsequent to the filing of any bankruptcy, receivership, insolvency or like petition. Without limiting the generality of the foregoing, Senior Debt shall include all obligations for fees, to indemnify, to reimburse for expenses and to reimburse for advances (whether for the payment of taxes, insurance premiums, the preservation or protection of property or title to property or any other reason).

   b. <u>Subordinated Debt</u> means any and all debt now or hereafter owed by Company to Subordinate Creditor including, without limitation, any debt that may be evidenced by promissory notes, documents, instruments or other agreements executed by the Company to the Subordinated Creditor (collectively, "Subordinate Debt Documents") and all debt and obligations arising under or incurred pursuant to any other documents executed or delivered in connection with it.

2. Unless and until all Senior Debt shall have been fully paid and satisfied and the obligation of Senior Creditor and Lenders to make any further loans or advances to Company shall have ceased and terminated, or Senior Creditor shall have specifically consented in writing, Subordinate Creditor shall not, except as otherwise specifically provided in section 8 below, (a) ask, demand, sue for, take or receive, or retain, from Company or any other person or entity, by setoff or in any other manner, payment of all or any part of the Subordinated Debt, (b) ask for, demand, receive or refuse to release in writing promptly after Senior Creditor's request any security for the Subordinated Debt, (c) amend any document existing in connection with the Subordinated Debt, (d) declare the Subordinated Debt due and payable by reason of any default or for any other reason, (e) bring or join with any creditor in bringing any proceeding against Company under any bankruptcy, reorganization, readjustment or arrangement of debt, suspension of payments, receivership, liquidation or insolvency or similar law or statute now or hereafter in effect ("Proceedings"), or (f) seek, join or assist any other creditor in seeking to have any of the business or assets of Company substantively consolidated with any of the business or liabilities of any other entity in any such proceeding. Subordinate Creditor hereby directs Company to make, and Company hereby agrees to make, such prior payment of the Senior Debt to Senior Creditor.

3. (a) Upon any distribution of the assets of Company in connection with any dissolution, winding up, liquidation or reorganization of Company (whether in Proceedings or upon an assignment for the benefit of creditors or any other marshalling of the assets and liabilities of Company or otherwise), Senior Creditor and Lenders shall first be entitled to receive payment in full of all Senior Debt before Subordinate Creditor shall be entitled to receive any payment in respect of the Subordinated Debt. Upon any such dissolution, winding up, liquidation or reorganization, any payment or distribution of assets of Company of any kind or character, whether in cash, property or securities, to which Subordinate Creditor would be entitled except for the provisions of this Agreement (including any such payment or distribution which may be payable or deliverable by virtue of the provisions of any securities which are subordinated as junior in right of payment to the Subordinated Debt) shall be made by the liquidating trustee or agent or other persons making such payment or distribution (whether a trustee in bankruptcy, a receiver or liquidating trustee or otherwise) (a "Paying Party"), or if received by Subordinate Creditor, directly to Senior Creditor, to the extent necessary to pay in full the Senior Debt remaining unpaid, after giving effect to any concurrent payment or distribution to Senior Creditor, pursuant to the terms of the Loan Agreement and the Notes (in the case of payments or distributions of Company's assets). Subordinate Creditor hereby authorizes and directs each Paying Party to pay over to Senior Creditor upon demand by Senior Creditor, all such payments or distributions without the necessity of any inquiry as to the status or balance of the Senior Debt, and without further notice to or consent of Subordinate Creditor.

   (b) Subordinate Creditor hereby irrevocably authorizes and empowers Senior Creditor to demand, sue for, collect and receive every such payment or distribution and give acquittance therefor, to execute, sign, endorse, transfer and deliver any and all receipts and instruments, and to file claims and take such other proceedings, all in the name of Subordinate Creditor, or otherwise, as Senior Creditor may deem necessary or advisable for the enforcement of this Agreement, but Senior Creditor has no obligation to do so. Subordinate Creditor hereby (i) agrees duly and promptly to take such action as may be required by Senior Creditor to collect the Subordinated Debt for the account of Senior Creditor and Lenders including filing appropriate proofs of claim in respect of the Subordinated Debt, (ii) authorizes and empowers Senior Creditor to vote the full amount of the Subordinated Debt in any bankruptcy, reorganization or similar proceedings affecting Company and in any meeting of creditors of Company, (iii) agrees to execute and deliver to Senior Creditor or its representatives on demand such powers of attorney, proofs of claim and other instruments as may be requested by Senior Creditor or its representatives to enable Senior Creditor to enforce any and all claims upon or with respect to the Subordinated Debt, to collect and receive any and all such payments or

Page 1

distributions which may be payable or deliverable at any time upon or with respect to the Subordinated Debt and to vote the full amount of the Subordinated Debt in any proceeding or meeting referred to in clause (ii) of this subparagraph 3(b).

(c) In the event any payment or distribution of assets of Company of any kind or character, whether in cash, property or securities, and whether or not pursuant to any dissolution, winding up, liquidation or reorganization, not permitted by or in accordance with the provisions of this Agreement shall be received by Subordinate Creditor, Subordinate Creditor shall not commingle such payment or distribution to Subordinate Creditor with other funds and shall hold it in trust for the benefit of, and shall pay it over or deliver it to, Senior Creditor, or to Senior Creditor's representative, in precisely the form received (except for the endorsement or assignment of Subordinate Creditor where required to effect a complete transfer); provided, that the provisions of this subparagraph 3(c) shall not be applicable to interest payments which shall have been made to Subordinate Creditor in strict accordance with the provisions of Section 8 below. In the event Subordinate Creditor fails to make any such endorsement or assignment, Senior Creditor is hereby irrevocable authorized to make it and to sign Subordinate Creditor's name to it as Subordinate Creditor's agent.

(d) Notwithstanding any other express or implied provision of this Agreement to the contrary, Subordinate Creditor shall not be entitled to be subrogated to any of the rights of Senior Creditor or Lenders against Company or any other person or entity or any Liens of the Senior Creditor or Lenders or other collateral security or rights of offset held by Senior Creditor for the payment of the Senior Debt, nor shall Subordinate Creditor have any right of indemnity, reimbursement or contribution against Company or any other person or entity for any payment of the Senior Debt, and Subordinate Creditor hereby expressly waives each and every such right of subrogation, indemnity, reimbursement and contribution.

4. Subordinate Creditor represents and warrants that no liens, security interests or assignments exist to secure any Subordinated Debt, and agrees that no liens, security interests or assignments ("Subordinate Liens") will arise or will be taken in the future to secure any Subordinated Debt without the specific written consent of Senior Creditor. Without limiting the foregoing, Subordinate Creditor hereby agrees (a) that Subordinate Creditor will not enforce any Subordinate Liens which may exist from time to time without the specific prior written consent of Senior Creditor and (b) that the Subordinate Liens, to the extent enforceable, will be enforceable by Senior Creditor. All amounts, whether in the form of cash, proceeds, checks, drafts, orders or other instruments for the payment of money, recovered with respect to any property of Company subject to the Subordinate Liens by the enforcement of the Subordinate Liens, shall, immediately upon the receipt by Subordinate Creditor, be paid over and delivered in the form received, but with any necessary endorsements or instruments required for payment, to Senior Creditor, and, until so delivered shall not be commingled with any other funds or property but shall be held by Subordinate Creditor upon an express trust for the benefit of Senior Creditor.

5. Subordinate Creditor hereby expressly subordinates and makes second, junior and inferior any and all liens, rights, powers, titles and interests of Subordinate Creditor under, pursuant to or by virtue of the Subordinate Liens (if any) to all liens, rights, titles and interests of Senior Creditor and Lenders under, pursuant to or by virtue of the Senior Creditor's and Lenders' Liens, and Subordinate Creditor agrees that all liens, rights, titles and interests of the Senior Creditor's and Lenders' Liens shall be unconditionally first, prior and superior to any and all liens, rights, powers, titles and interests of Subordinate Creditor under, pursuant to or by virtue of the Subordinate Liens. Subordinate Creditor further agrees that any and all liens, rights, titles and interests of Subordinate Creditor under, pursuant to or by virtue of the Subordinate Liens shall be and remain expressly subject and subordinate to any renewal, extension, refinancing, consolidation, modification or supplement of the liens, rights, titles and interests of the Senior Creditor's and Lenders' Liens, as well as any and all increases of them.

6. Subordinate Creditor, its successors or assigns or any other legal holder of the Subordinated Debt shall not acquire by subrogation, assignment, contract or otherwise, any lien upon or other estate, right or interest in any property (including but not limited to any which may arise in respect to real estate taxes, assessments or other governmental charges) which is or may be prior in right or dignity to the Senior Liens or any renewal, extension, refinancing, consolidation, modification or supplement of them.

7. Subordinate Creditor represents to Senior Creditor and Lenders that the Subordinated Debt is in good standing and in full force and effect and no breaches or defaults exist under the Subordinated Debt Documents which have not been cured or waived, and that the outstanding principal balance of the Subordinated Debt on this date is forty one million two hundred sixty eight thousand seven hundred and nine DOLLARS ($41,268,709).

8. (a) So long as no Event of Default or Default has occurred under the Loan Agreement which has not been fully cured to the satisfaction of Senior Creditor, or would result from such payment (and the parties to this Agreement specifically stipulate and agree occurrence of any event of default under the Subordinated Debt Documents shall automatically constitute a default under the Senior Debt), Company may pay, and Subordinate Creditor may accept and apply, payments (excluding prepayments) of principal and interest accruing on the Subordinated Debt in accordance with the Subordinated Debt Documents present terms and provisions, as they may hereafter be supplemented or amended; provided, that no supplement or amendment to the Subordinated Debt Documents made without Senior Creditor's prior written consent shall be effective for any purpose. Company may not pay, and Subordinate Creditor may not accept and apply, prepayments on the Subordinated Debt without the prior written consent of Senior Creditor.

(b) Company shall notify Senior Creditor in writing pursuant to the terms and conditions of the Loan Agreement of any proposed prepayment on the Subordinated Debt, the date of the proposed prepayment (which date shall be no earlier than thirty (30) days from the date Senior Creditor receives such notice), and the amount of proposed prepayment.

(c) If Senior Creditor allows such pre-payment and such prepayment is the full amount of the outstanding Subordinated Debt, Senior Creditor shall send the original copy of this Agreement to Subordinate Creditor, the original Subordinated Debt Documents and any other instrument evidencing the Subordinated Debt upon such prepayment and at such time, Subordinated Creditor shall be relieved of its obligations under this Agreement.

9. This Agreement extends to and covers all amounts due on the Senior Debt both before and after filing of any Proceeding by or against Company, and Senior Creditor and Lenders shall be entitled to amounts accruing on the Senior Debt from the date of filing of any such Proceeding to the date of full and final payment of the Senior Debt.

10. No part of the Subordinated Debt or any instrument evidencing or securing it has been heretofore transferred or assigned, and Subordinate Creditor will not transfer or assign any part of the Subordinated Debt or any instrument evidencing any part of it while the Senior Debt remains unpaid without providing written notice of any such transfer or assignment to Senior Creditor at or before the time of the transfer or assignment, which notice shall include the name, address, telephone and telecopy numbers of the transferee and must be accompanied by (a) a true, correct and complete copy of the instrument(s) of assignment and (b) a statement (which may be made a part of the assignment) executed by the transferee or assignee of the transferee's or assignee's express written recognition of this Agreement and agreement to recognize it, abide by it and honor it in accordance with its terms. No such assignment or transfer shall

116549.01051/21527539v.5

<mark>Case 1:14-cv-02863-CM Document 31-16 Filed 05/02/14 Page 4 of 6</mark>

be effective unless and until such notice, assignment copy and transferee's statement have been received by Senior Creditor. Any instrument now or hereafter evidencing the Subordinated Debt will contain provisions referring specifically to this Agreement.

11. Subordinate Creditor shall give, execute and deliver any notice, statement, instrument, document, agreement or other papers, and shall permit Senior Creditor, upon request, to make any notation or endorsement upon any promissory note or other instrument or paper evidencing or securing the Subordinated Debt, that may be necessary or desirable, or that Senior Creditor reasonably requests, in order to create, preserve or validate the rights of Senior Creditor under this Agreement, to enable Senior Creditor to exercise or enforce its rights under it, or otherwise to effect the purposes of this Agreement.

12. This Agreement is a continuing one, and all Senior Debt to which it applies or may apply under its terms shall conclusively be presumed to have been created in reliance on this Agreement. Company hereby agrees to pay upon demand all attorneys' fees and expenses reasonably incurred by Senior Creditor and Lenders in connection with the enforcement of its rights under this Agreement.

13. Subordinate Creditor and Company agree that, if at any time all or any part of any payment previously applied by Senior Creditor to the Senior Debt is or must be returned by Senior Creditor or any Lender (or recovered from Senior Creditor or any Lender) for any reason (including the order of any bankruptcy court), this Agreement shall automatically be reinstated to the same effect as if the prior application had not been made, and, in addition, Company hereby agrees to indemnify Senior Creditor and Lenders against, and to save and hold Senior Creditor and Lenders harmless from, any required return by Senior Creditor or Lenders (or recovery from Senior Creditor or Lenders) of any such payments because of its being deemed preferential under applicable bankruptcy, receivership or insolvency laws, or for any other reason.

14. Subordinate Creditor acknowledges that he/she/it has been given the opportunity to receive and review the Loan Agreement and the other loan documents executed in connection with or relating to the Senior Debt and that Subordinate Creditor has availed himself of such opportunity to the extent he desires to do so, and that he has no objection to any of the terms and conditions of such documents and consents to the execution and delivery of them and of this Agreement by Company, and to the performance of each of them by Company.

15. Any notice, request or other communication required or permitted to be given hereunder shall be given in writing by delivering it against receipt for it, by depositing it with an overnight delivery service or by depositing it in a receptacle maintained by the United States Postal Service, postage prepaid, registered or certified mail, return receipt requested, addressed to the respective parties at the following addresses (and if so given, shall be deemed given on the second business day after mailing):

If to Subordinate Creditor:  _____
_____
_____

If to Company:  As set forth in the Loan Agreement

If to Senior Creditor:  As set forth in the Loan Agreement

Company's address for notice may be changed at any time and from time to time, but only after thirty (30) days' advance written notice to the other parties and shall be the most recent such address furnished in writing by Company to the other parties. Subordinate Creditor's and Senior Creditor's respective addresses for notice may be changed at any time and from time to time, but only after ten (10) days' advance written notice to company and each such party's address for notice shall be the most recent such address furnished in writing by such party to Company. Actual notice, however and from whomever given or received, shall always be effective when received.

16. This Agreement shall not be changed orally but shall be changed only by agreement in writing signed by Subordinate Creditor and Senior Creditor (without any necessity for notice to or consent by Company, which are expressly WAIVED by Company). No course of dealing between the parties, no usage of trade and no parole or extrinsic evidence of any nature shall be used to supplement or modify any of the terms or provisions of this Agreement.

17. If any provision of this Agreement is held to be illegal, invalid or unenforceable under present or future laws, the legality, validity and enforceability of the remaining provisions of this Agreement shall not be affected thereby, and this Agreement shall be liberally construed so as to carry out the intent of the parties to it.

18. THIS AGREEMENT (A) SHALL BE BINDING UPON THE PARTIES HERETO AND THEIR RESPECTIVE SUCCESSORS AND ASSIGNS; (B) MAY BE MODIFIED OR AMENDED ONLY BY A WRITING AND SIGNED BY EACH PARTY TO THIS AGREEMENT; (C) SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO CONFLICT OF LAW PRINCIPLES THEREOF; (D) MAY BE EXECUTED IN SEVERAL COUNTERPARTS, AND BY THE PARTIES TO IT ON SEPARATE COUNTERPARTS AND EACH COUNTERPART WHEN SO EXECUTED AND DELIVERED SHALL CONSTITUTE AN ORIGINAL AGREEMENT, AND ALL SUCH SEPARATE COUNTERPARTS SHALL CONSTITUTE ONE AND THE SAME AGREEMENT; AND (E) EMBODIES THE ENTIRE AGREEMENT AND UNDERSTANDING AMONG THE PARTIES WITH RESPECT TO ITS SUBJECT MATTER AND SUPERSEDES ALL PRIOR AGREEMENTS, CONSENTS AND UNDERSTANDINGS RELATING TO SUCH SUBJECT MATTER.

19. IN ANY JUDICIAL PROCEEDING INVOLVING, DIRECTLY OR INDIRECTLY, ANY MATTER ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE RELATIONSHIP ESTABLISHED HEREUNDER, COMPANY AND SUBORDINATE CREDITOR HEREBY IRREVOCABLY SUBMIT TO THE JURISDICTION OF ANY STATE OR FEDERAL COURT LOCATED IN NEW YORK COUNTY, NEW YORK AND AGREES NOT TO RAISE ANY OBJECTION TO SUCH JURISDICTION OR TO THE LAYING OR MAINTAINING OF THE VENUE OF ANY SUCH PROCEEDING IN SUCH COUNTY. COMPANY AND SUBORDINATE CREDITOR AGREE THAT SERVICE OF PROCESS IN ANY SUCH PROCEEDING MAY BE DULY EFFECTED UPON IT BY MAILING A COPY THEREOF, BY REGISTERED MAIL, POSTAGE PREPAID, TO SUBORDINATE CREDITOR. NOTHING HEREIN SHALL AFFECT THE RIGHT OF SENIOR CREDITOR OR LENDERS TO COMMENCE LEGAL PROCEEDINGS OR OTHERWISE PROCEED AGAINST SUBORDINATE CREDITOR IN ANY JURISDICTION OR TO SERVE PROCESS IN ANY MANNER PERMITTED BY APPLICABLE LAW. COMPANY AND SUBORDINATE CREDITOR AGREE THAT A FINAL JUDGMENT IN ANY SUCH ACTION OR PROCEEDING SHALL BE CONCLUSIVE AND MAY BE ENFORCED IN OTHER JURISDICTIONS BY SUIT ON THE JUDGMENT OR IN ANY OTHER MANNER PROVIDED BY LAW.

<mark>Page 3</mark>

116549.01051/21527539v.5

20. To the maximum extent not prohibited by law, any controversy, dispute, or claim arising out of, in connection with, or relating to this Agreement or any transaction provided for herein, including but not limited to any claim based on or arising from an alleged tort or an alleged breach of any agreement contained herein, shall, at the request of either party hereto (either before or after the commencement of judicial proceedings), be settled by arbitration pursuant to Title 9 of the United States Code, which the parties hereto acknowledge and agree applies to the transaction involved herein, and in accordance with the Commercial Arbitration Rules of the American Arbitration Association (the "AAA"). In any such arbitration proceeding: (a) all statutes of limitations which would otherwise be applicable shall apply; and (b) the proceeding shall be conducted in Philadelphia, Pennsylvania by a single arbitrator, if the amount in controversy is $1,000,000.00 or less, or by a panel of three arbitrators if the amount in controversy is over $1,000,000.00. All arbitrators shall be selected by the process of appointment from a panel pursuant to Section 13 of the AAA Commercial Arbitration Rules and each arbitrator shall be either an active attorney or retired judge with an AAA acknowledged expertise in the subject matter of the controversy, dispute, or claim. Any award rendered in any such arbitration proceeding shall be final and binding, and judgment upon any such award may be entered in any court having jurisdiction.

If any party hereto files a proceeding in any court to resolve any such controversy, dispute, or claim, such action shall not constitute a waiver of the right of such party or a bar to the right of any other party to seek arbitration under the provisions of this paragraph of that or any other claim, dispute, or controversy, and the court shall, upon motion of any party to the proceeding, direct that such controversy, dispute, or claim be arbitrated in accordance with this paragraph.

Notwithstanding any of the foregoing, the parties hereto agree that no arbitrator or panel of arbitrators shall possess or have the power to (i) assess punitive damages, (ii) dissolve, rescind or reform this Agreement (except that the arbitrator may construe ambiguous terms of this Agreement), (iii) enter judgment on the debt, (iv) exercise equitable powers or issue or enter any equitable remedies, or (v) allow discovery of attorney/client privileged information, and the parties hereby waive the aforementioned remedies. The Commercial Arbitration Rules of the AAA are hereby modified to this extent for the purpose of arbitration of any dispute, controversy, or claim arising out of, in connection with this Agreement.

EXECUTED as of the date first above written.

| SUBORDINATE CREDITOR | SENIOR CREDITOR |
|---|---|
| BARCO AUTO LEASING CORP. | WELLS FARGO FINANCIAL PREFERRED CAPITAL, INC., AS AGENT |
| By: _____ Printed Name: STEPHEN BARON | By: _____ William M. Laird, Senior Vice President |

COMPANY

CONDOR CAPITAL CORP.

By: _____
Printed Name: STEPHEN BARON
Title: _____

Page 4

116549.01051/21527539v.5

STATE OF _____

COUNTY OF _____ §

This instrument was acknowledged before me on this 12th day of October, 2006, by Stephen Baron

*Rosemary Nyman*
Notary Public in and for
The State of New York

My Commission Expires: 1/14/10

ROSEMARY NYMAN
Notary Public, State of New York
No. 01NY6068822
Qualified in Suffolk County
Commission Expires Jan. 14, 2010