

*Phone:* (212) 885-5566
*Fax:* (917) 332-3712
*Email:* HNCogan@BlankRome.com

July 21, 2014

**VIA ECF**

Hon. Colleen McMahon
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

          Re:    Lawsky v. Condor Capital Corporation and Stephen Baron,
                 No. 14 Civ. 2863 (CM)

Dear Judge McMahon,

      As you know, we are counsel to Intervenor Wells Fargo Bank, N.A., as successor by merger to Wells Fargo Preferred Capital, Inc., as agent ("Wells Fargo" or Agent"), on behalf of itself and BMO Harris Financing, Inc. ("BMO"), as lenders (collectively, the "Lenders"), to the Condor Capital Corporation ("Condor" or the "Company") asset-based credit facility. We write in furtherance of the July 14, 2014 report of the court-appointed receiver, Denis O'Connor (the "Receiver") (the "July 14 Report"), to request a conference with the Court to address the issues set forth below. We believe it is necessary to have procedures and necessary orders in place so that an anticipated full repayment of the Lenders will not be delayed beyond the September 5th transaction date established by the Receiver in his July 14 Report (further discussed below). We have advised the Receiver that we are requesting a conference and the Receiver supports a conference with the Court.

      Although the Receiver is pursuing the dual track of seeking potential refinancing of the loan and a sale of the loan portfolio, an examination of the July 14 Report leads to the inevitable conclusion that a sale of the loan portfolio is the only realistic option to preserve and maximize the value of Wells Fargo's collateral in any acceptable timeframe. The full balance of the loan ($224 million) is currently due and owing. All of the cash in the possession of the Receiver as well as all additional proceeds of the loan portfolio are the collateral of Wells Fargo and Wells Fargo is entitled to same. Moreover, on June 4, 2014, Wells Fargo advised the Court that it will

405 Lexington Avenue New York, NY 10174-0208

www.BlankRome.com

Boca Raton • Cincinnati • Houston • Los Angeles • New York • Philadelphia • Princeton • San Francisco • Shanghai • Tampa • Washington • Wilmington

116549.01400/7411656v.5



Hon. Colleen McMahon
United States District Judge
July 21, 2014
Page 2

not fund any further loan originations nor permit its cash collateral to be used for loan origination purposes.

    The July 14th Report indicates that a refinancing is highly unlikely under current conditions. Moreover, Wells Fargo is concerned that the sale efforts and the Receiver's ability to achieve and consummate a sale is being, and will be, thwarted by Condor's sole shareholder, Mr. Stephen Baron ("Baron"). Consequently, this Court should cloak the Receiver with all rights and powers necessary to effectuate a repayment of the Lenders by a sale of the collateral, without the consent, cooperation or interference of Condor or Baron, in the event in the Receiver's judgment a refinancing is not likely to occur by September 5, 2014--the closing date for a refinancing transaction set by the Receiver (July 14 Report, p. 26). Alternatively, Wells Fargo can effectuate a transfer of title and a sale of the assets pursuant to Wells Fargo's rights under the loan documents and applicable law, including Article 9 of the Uniform Commercial Code as adopted in New York. The Receiver and Wells Fargo can work cooperatively to accomplish an Article 9 sale and transition servicing of the loan portfolio to a purchaser, with minimal disruption to the consumer. In order to avoid unnecessary delay, and to assist the Receiver in this process because he is not represented by counsel, we believe that this process and necessary orders should be in place before that time.

    As the July 14th Report demonstrates, there are a number of reasons why a replacement lender will not be found in any reasonable timetable, and the sale of the loan portfolio is inevitable, including:

    1.    The Department of Financial Services ("DFS") has discontinued its settlement dialogue with Condor, which puts Condor's state license to operate as a sales finance company in jeopardy of revocation, both in New York and other jurisdictions. (*Id.*, p. 9.). In the absence of an immediate settlement, no refinancing could likely be accomplished before September 5, 2014, if at all. Consequently, pursuing this dual track is merely a delay of the inevitable—i.e. that a refinancing is not feasible and therefore the loan portfolio must be sold.

    2.    The Receiver and Condor are having difficulty finding an institution willing to entertain an acceptable treasury management arrangement for the collection and management of the loan portfolio, including the opening of new accounts. As disclosed in prior reports, Citibank has advised Condor to relocate to another bank and that Citibank will not be available to Condor in the future. The Receiver and Condor management have contacted nine banks to inquire about entering into a service agreement and opening a new account and eight of the nine banks have declined to do so (and the ninth has not yet responded) (Id. p. 33). Any potential refinancing will



Hon. Colleen McMahon
United States District Judge
July 21, 2014
Page 3

likely mandate that Condor have in place and maintain an appropriate treasury management arrangement.

      3.      The investment bank identified by Condor to pursue a securitization transaction has indicated to the Receiver that Condor would need to pursue a credit rating from one to two nationally recognized credit rating agencies, which would require the successful settlement of this lawsuit. (*Id.*, p. 26.) That simply cannot happen in light of the fact that DFS has discontinued its settlement dialogue with Condor. The investment bank believes an "un-rated" transaction could be possible, but it "may result in additional delays, complication and cost to the Company." (*Id.*) Thus, the Receiver reports that Condor's own investment banker acknowledges that an unrated securitization (if one is even possible) would not close before September 5, 2014.

      4.      Up to date and accurate financial information would be required in any refinancing. Even the financial information attached to the July 14 Report is stale at best, and there are no updated financials. In all probability, audited financials would be required, yet, no work on the current audit has even begun. Even if the work begins now, an audit will not be received prior to September 5, 2014.

      5.      The July 14 Report states that Condor does not have an effective compliance management system or culture of compliance. (*Id.*, p. 24.) The Receiver believes "the road to an effective compliance management system and culture of compliance is a long one" (*id.*), particularly without the "[p]roper tone at the top and a willingness to invest in best practices," which Condor has historically lacked. (*Id.*) Those at Condor who created a culture lacking of compliance (i.e. Stephen Baron and his son Todd Baron) are still actively participating in the management of the Company. Indeed, "[i]t is the Receiver's opinion that in order to achieve adequate corporate governance, Condor will need to insulate itself from the control and influence of Baron. This might not be achievable as Baron is the 100% shareholder of Condor and because of Baron's passion to guide and control Condor's business practices." (Id. at 7). The current conditions just do not support a refinancing.

      6.      The rate of delinquent loans has increased since commencement of the lawsuit by DFS, which the Receiver states is a result of, among other things, "[a]ngry calls" from customers, which increases call time and reduces the number of collection calls made per day, and customers awareness of Condor's legal problems, which they may be using to avoid making required payments on their loans. (*Id.*, p. 29.) As delinquency rates increase, the value of the collateral decreases.



Hon. Colleen McMahon
United States District Judge
July 21, 2014
Page 4

Wells Fargo believes that Baron has not come to terms with the gravity of the situation and the necessity to immediately repay the Lenders, but instead, notwithstanding numerous and repeated statements, in court, to counsel, and to him directly, Baron harbors the mistaken belief that Wells Fargo and BMO will provide financing in the future or will forbear from exercising their remedies.  Importantly, while the Receiver is pursuing a sale of the loan portfolio and a securitization simultaneously (July 14 Report, p. 25), Baron has apparently instructed the company not to cooperate with any bidder that is interested in the purchase of the portfolio by refusing to have Condor sign the confidentiality agreements. (*Id.*, p. 8, fn. 9.).  Indeed, Baron has prohibited Condor from signing any confidentiality agreements of any prospective refinancing entities that is not a securitization. In fact, of the 18 confidentiality agreements presented to Condor for signature, the only one Baron allowed Condor to sign was with a firm attempting to pursue a securitization.  Clearly Baron is not interested in a full and thorough search for a source to refinance the Lenders.

Additionally, Wells Fargo and BMO delivered a list of 18 potential buyers of the portfolio, and Condor objected to the majority of the potential buyers, alleging that these parties are competitors.  Given that the parties would only seek to purchase the loan portfolio, the Lenders question what, if anything, could be proprietary.  Nonetheless, even if true, reducing the pool of potential interested bidders can potentially reduce the purchase price that will be received for the asset.  This is further indicia that the parties can expect no cooperation from Baron or Condor in the sale of the portfolio or in a refinancing of the loan from any replacement lender that is not a securitization.

Thus, while Wells Fargo does not oppose the Receiver continuing to pursue a refinancing of the Wells Fargo facility, Wells Fargo wants to ensure that the Receiver can move forward to consummate a refinancing or a sale by September 5, 2014, free from any interference from Baron or Condor.  We therefore request a conference with the Court to discuss the implementation and direction of the procedures and relief from the Court as follows:

1.     An order that the Receiver may pursue all interested parties and bidders in his discretion; and

2.     If in the Receiver's judgment either a refinancing or a sale cannot occur with Condor's consent or cooperation by September 5, 2014,

        (i)     An order authorizing and directing the Receiver to enter into any refinancing of the Wells Fargo debt and/or sale of the loan portfolio, and



Hon. Colleen McMahon
United States District Judge
July 21, 2014
Page 5

                execute and deliver all documents on behalf of Condor without the consent of Condor and Baron; and/or

    (ii)    Authorizing Wells Fargo, as of September 5, as secured creditor, with the cooperation of the Receiver, to conduct a sale of the collateral pursuant to N.Y. U.C.C. Article 9.

Lastly, we respectfully request that the Receiver continue the practice of filing status reports with the Court every twenty days.

We appreciate Your Honor's consideration.

                                      Respectfully Submitted,

                                      */s/ Harris N. Cogan*
                                      Harris N. Cogan
                                      Blank Rome LLP
                                      405 Lexington Avenue
                                      New York, NY 1014
                                      (212) 885-5566
                                      hcogan@blankrome.com
                                      *Counsel for Wells Fargo Bank, N.A.*

cc:    Denis O'Connor (via e-mail)
        Counsel of Record (via ECF)