```
                              Denis O'Connor
                                 Receiver
                            Condor Capital Corp.
                            c/o Alix Partners, LLP
                              909 Third Avenue
                             New York NY  10019
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/15/15

June 15, 2015

Hon. Colleen McMahon
United States District Judge
Southern District of New York
United States District Court
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007



6/15/2015
Thanks. Too bad Mr. Baron did not agree to the earlier proposal - he will be second Sale - lies with DFS from this one it approved.

RE: **BENJAMIN M. LAWSKY, Superintendent of Financial Services of the State of New York, v. CONDOR CAPITAL CORP. and STEPHEN BARON, Case No. 14 Civ. 2863 (S.D.N.Y.) (CM)**

Dear Judge McMahon:

**MEMO ENDORSED**

The purpose of this letter is to provide Your Honor with an update on the sale of Condor's remaining loan portfolio (the "Final Sale") and the current status of the Receivership.

**Update on Final Sale of Condor Capital Corp. Loan Portfolio**

Pursuant to the Final Consent Judgment, the Receiver executed a binding Letter of Intent ("BLOI") for the Final Sale with a third-party buyer (the "Buyer"). The BLOI consists of an upfront payment and a back-end participating interest for Condor Capital Corp. ("Condor") and represents the best market-based price received from all potential third-party buyers wherein Condor's residual ownership interest was less than fifty percent during the auction process conducted in May 2015.[1]

Your Honor will recall on November 14, 2014 the Receiver sold approximately half of the loans in the Condor portfolio for 92% of the loans' unpaid principal balance (the "First Sale"). The First Sale

---

[1] One bidder proposed a structure wherein a modest amount of cash was offered at closing for the remaining portfolio with a 75% residual interest going to Condor after the bidder received the return of its investment and a minimum rate of return thereon.

consisted of a pool of approximately 13,915 loans that were all current (average days past due of just 1.2 days). Condor's remaining loan portfolio at April 30, 2015, is comprised of approximately 13,896 loans, with an average days past due of 91.5 days. Based on April 30, 2015 data, 65% (nearly $102 million of unpaid principal balance) of the remaining loan portfolio was 30 days or more past due.

The purchase price for the Final Sale will be materially lower than the 92% achieved for the First Sale because of the delinquency and agings statistics of Condor's remaining loan portfolio as compared to the loans sold in November 2014.

The decision to select the Buyer was based on the terms of the Final Consent Judgment, which included: (a) the economic value to Condor; (b) the requirement that the sale be structured to ensure that Stephen Baron ("Baron") shall exercise no influence, directly or indirectly over the servicing of the loans; and (c) the sale was structured to provide back-end upside to Condor should the portfolio perform well over the next 4 to 5 years.

The Final Consent Judgment provided for Baron to reject one binding letter of intent and the Department of Financial Services (the "DFS") the right to reject an unlimited number of buyers. The review of the BLOI by the DFS is underway.

As noted in the letter from Baker Hostetler ("Baker"), Receiver's counsel, to Your Honor dated June 11, 2015, the Receiver's decision took into account Baron's preferred transaction, which involved a Special Purpose Vehicle ("SPV") and a third-party servicer wherein the legal form of the transaction was structured as a sale but the economic substance was a transfer of the servicing with Condor retaining all of the risk.

I refer your Honor to the transaction of the Independent Buyer A ("IBA") as described in the letter from Katten Muchin Rosenman LLP ("Katten") dated February 25, 2015, addressed to Your Honor. As

Hon. Colleen McMahon
United States District Judge
June 15, 2015
Page 3

described in my letter to Your Honor on February 26, 2015, this transaction is structured as a transfer of title of the remaining loan portfolio to an SPV in exchange for a note payable to Condor and the transfer of the servicing of the loans to a third-party servicer. The IBA transaction was a zero cash down deal and Condor retains all of the financial risks with all future loan portfolio proceeds inuring to Baron (after servicing costs and other fees are netted off).

While the IBA transaction was further amended and updated by the IBA, Baron, and the Receiver, since February 2015, the fundamental structure whereby Condor would retain 100% of the risk of the portfolio's future performance remains unchanged.[2] With the retention of all of the economic benefit and risks from the portfolio, the IBA transaction would likely offer significantly more economic value (estimated at approximately $15 million based on one set of assumptions and projections), but is contingent and speculative because the loan portfolio would have to meet certain performance metrics over the next 4 to 5 years. Furthermore, the proposed transaction included safeguards including financial penalties, if Baron communicated with the servicer or a consumer, and envisioned the retention of a court approved portfolio manager to oversee compliance of the structure and performance of the portfolio over the next 4 to 5 years.

## Status of Receivership

With respect to restitution and interest payments as required by the Final Consent Judgment, summarized below are the remaining required restitution and interest payments, which are nearly completed.

---

[2] Revisions to the economic terms of the IBA transaction include the addition of: (1) a reserve account funded by Baron to support the repayment of the note payable from the IBA to Condor for the purchase of the portfolio; and (2) incentive payments to the servicer based on net proceeds collected from the portfolio.

Hon. Colleen McMahon
United States District Judge
June 15, 2015
Page 4

Summary of Restitution and Interest Payments:

|  | # of Accounts | # of Checks Mailed | $ Value [4] (in thousands) |
|---|---|---|---|
| Positive Credit Balances, 360/365 Interest Issues and Legal Accounts [1] | 39,700 | 43,800 | $6,500 |
| 9% Interest [2] | 23,200 | 23,200 | $1,800 |
| Positive Credit Balances and 9% Interest combined | 15,200 | 15,200 | $4,600 |
| **Subtotal** | **78,100** | **82,200** | **$12,900** |
| *To be completed:* |  |  |  |
| Positive Credit Balances and 9% Interest [3] | 3,800 | 3,800 | $500 |
| **Total** | **81,900** | **86,000** | **$13,400** |

[1] Checks mailed exceeded the number of accounts due to the separate calculation and additional checks issued for the 360/365 interest issue, returned mail, name changes, etc.

[2] Approximately 38,000 checks were mailed before the parties entered into the Final Consent Judgment. These payments did not include the 9% interest required by the Final Consent Judgment. The additional payments included in this line item relate to the 9% interest component only.

[3] These remaining positive credit balances are currently being investigated to determine whether amounts are in fact due back to customers. Any checks to be sent are expected to be sent within the next two weeks.

[4] The dollar values above reflect gross amounts and do not reflect the reissuance of check and corresponding cancellation of amounts.

Condor continues to re-issue returned and uncashed refund checks for which updated customer contact information can be obtained. This updated contact information is obtained through direct contact with the customer or through electronic searches conducted by Keane, a provider of unclaimed property consulting services. The Receiver has contracted with Keane to provide such electronic searches and to eventually escheat unclaimed refunds in accordance with applicable state laws.

Customers of Condor have filed over 275 complaints to the DFS. The Receiver and Condor employees have reviewed and responded to most of these complaints. Further, Condor, counsel to the Defendants, and the Receiver continue to manage a number of litigations from consumers, dealers, and auction companies.

Hon. Colleen McMahon
United States District Judge
June 15, 2015
Page 5

With respect to the operations of Condor, the company continues to service its remaining loan portfolio from its offices in Hauppauge, New York and Lake Mary, FL. Stay incentive programs have been established to motivate employees to remain at Condor through the wind-down of its operations.

Condor currently has a bank basis cash balance of approximately $42 million, which represents net receipts after expenses over the past seven months or approximately a positive net cash flow of $6 million per month. The $42 million balance excludes amounts held in the restitution escrow account, which has a bank basis cash balance of approximately $5.1 million.

With respect to professionals hired or used by the Receiver and compensation paid to such professionals, the Preliminary Injunction and Order dated May 13, 2014 (the "Order") states that "[t]he Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request to be filed no more than sixty (60) days after the date of this Order." Since my April 17, 2015 Letter to Your Honor, legal and professional fees incurred in connection with Condor include the following payments remitted to the Receiver's firm, law firms, and other professional firms:

- $423,000 to AlixPartners LLP for Receiver's fees and expenses and for assistance provided to the Receiver from January 25, 2015 through March 21, 2015 (approximately two months).
- $497,000 to Katten, counsel for the Defendants, for services from January 14, 2015 through March 31, 2015.
- $161,000 to Baker for services during March 2015. Baker was retained to advise the Receiver on (i) the First Sale; (ii) post-closing matters related to the First Sale; (iii) the Final Sale; and (iv) various matters and legal issues related to accomplishing the foregoing.

- $64,000 to Keane Inc. for identifying updated address information for customers, unclaimed property and escheat reporting from February 2015 through March 2015 (approximately two months).

- $15,000 to Transperfect for providing electronic data room services from March 2015 through June 2015 (approximately four months) related to the First Sale and the Final Sale.

- $3,000 to Jenner & Block LLP for services from March 2015 through April 2015 (approximately two months) for advice regarding the Receiver's authorities and responsibilities to the parties.

- Payments to a number of law firms historically retained for collection services to Condor.

Hon. Colleen McMahon
United States District Judge
June 15, 2015
Page 7

A summary of all relevant fees follows:

($ in thousands)

| Firm | Inception of Receivership through April 17, 2015 Letter to the Court | Post April 17, 2015 Letter to the Court | Total |
|---|---|---|---|
| Receiver and AlixPartners | $2,794 | $423 | $3,216 |
| *Law Firms* | | | |
| Katten Munchen | $1,801 | $497 | $2,298 |
| Schlam Stone & Dolan | $143 | $0 | $143 |
| Baker Hostetler | $445 | $161 | $606 |
| Jenner & Block | $19 | $3 | $22 |
| Blank Rome | $701 | $0 | $701 |
| Chapman and Cutler | $125 | $0 | $125 |
| *Consulting and Other Firms* | | | |
| FIS | $87 | $0 | $87 |
| Transperfect | $94 | $15 | $109 |
| Keane | $0 | $64 | $64 |
| **Total** | **$6,210** | **$1,163** | **$7,373** |

Very truly yours,

*/s/ Denis O'Connor*

Denis O'Connor

Receiver

CC: Joy Feigenbaum, NYS Department of Financial Services
    Stephen Baron, Condor Capital Corp.
    Counsel to all parties