UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BENJAMIN M. LAWSKY, Superintendent of Financial Services of the State of New York,

*Plaintiff,*

-against-

CONDOR CAPITAL CORPORATION and STEPHEN BARON,

*Defendants.*

-and-

WELLS FARGO BANK, N.A., as Agent for Certain Financial Institutions as Lenders,

*Intervenor.*

Case No.: 14 Civ. 2863 (CM)

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT STEPHEN BARON'S MOTION FOR A RESTRAINING ORDER

SCHLAM STONE & DOLAN LLP
Richard H. Dolan (RD-2212)
26 Broadway
New York, N.Y. 10004
(212) 344-5400 (Telephone)
(212) 344-7677 (Facsimile)
E-Mail: rdolan@schlamstone.com

*Special Counsel for Defendant Stephen Baron*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ........................................................................................................ 2

    A.    The Underlying Litigation and Consent Judgment ............................................. 2

    B.    The Bidding Process & First Veto ..................................................................... 4

ARGUMENT ............................................................................................................................. 8

I.    MR. BARON IS LIKELY TO SUCCEED ON THE MERITS
OF HIS CLAIM THAT THE RECEIVER HAS BREACHED
HIS FIDUCIARY DUTY TO CONDOR ........................................................................ 9

II.    THERE IS NO EXCUSE FOR THE RECEIVER'S BREACH
OF FIDUCIARY DUTY ................................................................................................ 10

III.    MR. BARON WILL SUFFER IRREPARABLE HARM IF
THE RECEIVER IS NOT ENJOINED FROM EXECUTING
THE TRANSACTION CONTEMPLATED IN THE
LETTER OF INTENT .................................................................................................... 12

IV.    THE BALANCE OF HARDSHIPS FAVORS RESTRAINING
THE RECEIVER FROM SELLING THE PORTFOLIO TO THE
LOW JUNE BIDDER AND MAINTAINING THE *STATUS QUO* ........................... 13

CONCLUSION ........................................................................................................................ 14

# TABLE OF AUTHORITIES

**CASES**

*Bank of Tokyo Trust Co. v. Urban Food Malls*,
   229 A.D.2d 14 (1st Dep't 1996) ..................................................................................9

*Brenntag International. Chemicals, Inc. v. Bank of India*,
   175 F.3d 245 (2d Cir. 1999) .....................................................................................12

*Consolidated Gold Fields PLC v. Minorco, S.A.*,
   871 F.2d 252 (2d Cir. 1989) .....................................................................................12

*Eng v. Smith*,
   849 F.2d 80 (2d Cir. 1988) .........................................................................................9

*Golden Pacific Bancorp. v. Federal Deposit Insurance Corporation*,
   375 F.3d 196 (2d Cir. 2004) ...................................................................................1, 9

*Green Party v. New York State Board of Elections*,
   389 F.3d 411 (2d Cir. 2004) .......................................................................................8

*Jackson v. Smith*,
   254 U.S. 586 (1921) ...................................................................................................9

*Paramount Communications, Inc. v. QVC Network Inc.*,
   637 A.2d 34 (Del. 1993) .............................................................................................9

*Phelan v. Middle States Oil Corp.*,
   154 F.2d 978 (2d Cir. 1946) .......................................................................................9

*Tom Doherty Associates. v. Saban Entertainment*,
   60 F.3d 27 (2d Cir. 1995) ...........................................................................................8

**RULES, CODES, ACTS, LAWS, STATUTES
AND OTHER AUTHORITIES**

F.R.C.P. Rule 65 ...................................................................................................................1

Dodd-Frank Act §1031 .........................................................................................................2

Dodd-Frank Act §1036(a)(1) ................................................................................................2

Defendant Stephen Baron ("Baron"), through his undersigned special counsel[1], respectfully submits this memorandum of law, together with the Declaration Of Leah M. Campbell, Esq. ("Campbell Decl."), in support of his motion, pursuant to Federal Rule of Civil Procedure 65, for an injunction restraining Denis O'Connor of Alix Partners LLC (the "Receiver") as the receiver for Condor Capital Corporation ("Condor"), from selling the assets of Condor as contemplated in the June 12, 2015 binding letter of intent ("Letter of Intent," a copy of which is annexed to Campbell Decl. as Ex. 1), pending a hearing to determine if the sale constitutes a breach of the Receiver's fiduciary duty to the estate under his control.

## PRELIMINARY STATEMENT

Under the terms of the Final Consent Judgment, the Receiver has been given authority to sell the remaining loan portfolio of subprime auto loans held by Condor (the "Portfolio"). By early June, the Receiver narrowed the bidding to two letters of intent, both of which satisfied the terms of the Final Consent Judgment. After conducting financial analyses of the two competing deals on June 12, the Receiver announced on June 15 that he had signed a binding Letter of Intent to proceed with a sale to the low bidder ("Low June Bidder"). According to the Receiver's own valuations, the Low June Bidder's offer generated ▓▓▓▓▓▓▓ less than the other bid under consideration.

The Receiver's decision constitutes a *prima facie* breach of his fiduciary duties to the estate, which required him to "endeavor to realize the largest possible amount for assets of the estate." *Golden Pacific Bancorp. v. F.D.I.C.*, 375 F.3d 196, 201 (2d Cir. 2004). This is the unusual case in which the person the Receiver seeks to protect is the defendant himself, and not

---

[1] Because Defendant's regular counsel in this case, Katten Muchen Rosenman LLP, cannot represent Defendant because of a conflict of interest, special counsel is acting for Defendant on this application. In all other respects, Defendant's counsel remains Katten Muchen Rosenman LLP.

1

any third-party. It is undisputed that the consumers have already been made whole by the restitution required by the Final Consent Judgment. Nor does the Receiver dispute that the terms of the high bid do not permit Mr. Baron to interfere with or influence the servicing of the Portfolio. Thus, the high bid satisfies the two conditions in the Final Consent Judgment: (1) the purchaser must be independent of Mr. Baron, and (2) the sale must be structured such that Mr. Baron has "no direct or indirect" influence over the servicing of those loans. The sale of the Portfolio is not intended as additional punishment for Mr. Baron—that has already been accomplished by full restitution to consumers, a $3 million fine and the dissolution of his company. Rather, the only proper purpose, as the Receiver has conceded, is to maximize the return to the beneficiary—Mr. Baron. The Low June Bidder does not achieve that end.

Accordingly, to prevent a loss that even the Receiver calculates ▓▓▓▓▓▓▓▓ Mr. Baron seeks an order preventing the sale from moving forward until a final determination can be made concerning the Receiver's breach of his duty.

## STATEMENT OF FACTS

### A. The Underlying Litigation and Consent Judgment

On April 23, 2014, DFS filed a complaint under Sections 1031 and 1036(a)(1) of the Dodd-Frank Act against Condor and Mr. Baron, alleging violations of various consumer protection and banking laws. (Campbell Decl. Ex. 2.) On May 13, 2014, the Court entered an order ("Preliminary Injunction Order") shutting down the defendants' lending operations and appointing Denis O'Connor of Alix Partners as Receiver. (Campbell Decl. Ex. 3.) In order to resolve the litigation and the risk of potentially crippling penalties, defendants entered into the Final Consent Judgment, pursuant to which they agreed to make restitution with interest to customers, and to pay a $3,000,000 fine to plaintiff. (Campbell Decl. Ex. 4, at 10.) In addition

2

to the fines and restitution payments, the parties agreed that the Receiver would sell the Portfolio and shutter Condor for good. (Campbell Decl. Ex. 4, at 7.)

When the parties were negotiating the terms of the Final Consent Judgment in December 2014, plaintiff made it clear that, with regard to the Portfolio sale, it was not concerned with the ultimate price paid for the Portfolio or whether the sale price was made in installment payments or earn-outs, so long as (1) the purchaser was independent of Mr. Baron, and (2) the sale was structured such that Mr. Baron has "no direct or indirect" influence over the servicing of those loans. (Campbell Decl. ¶ 4, Ex. 4.) Accordingly, both provisions were incorporated into the Final Consent Judgment in Sections I.A. and I.B., respectively:

> For purposes of this Final Consent Judgment, a person shall be considered "Independent" if the person: (1) is not related by blood or marriage to Stephen Baron; (2) is not a current or former business associate or personal acquaintance, including an employee or employer, of Stephen Baron or any person related by blood or marriage to Stephen Baron; and (3) is not a current or former attorney, fiduciary, or other advisor who has represented Stephen Baron, Condor, or any person related by blood or marriage to Stephen Baron…The Receiver shall sell all the remaining loans in Condor's loan portfolio to one or more Independent purchaser(s).
>
> . . .
>
> In all events, the Receiver shall structure the sale of condor's loans in a manner that ensures that Stephen Baron shall exercise no influence, directly or indirectly, over the servicing of these or any other loans at any present or future time, and shall include in any documents memorializing any such sale transaction language to this effect.

(Campbell Decl. Ex. 4, at 7-8.)

The Final Consent Judgment contains no additional requirements for the sale of the Portfolio. Significantly, that Judgment does not diminish the duties and obligations governing a Receiver's exercise of his powers under well-settled law. As set forth more fully below, the

Receiver retains the standard duties of a federal receiver to treat all parties equally, and to maximize the assets of the estate.

**B.     The Bidding Process & First Veto**

The Final Consent Judgment required the Receiver to enter into a binding letter of intent with a portfolio purchaser no later than "one-hundred-twenty days after January 5, 2015 or one-hundred-twenty days after entry of this Final Consent Judgment, whichever is later." (Campbell Decl. Ex. 4, at 7.) Accordingly, the Receiver started the bidding process in late December 2014 and January 2015. (Campbell Decl. Ex. 5.) In his December 22, 2014 letter requesting bids, the Receiver advised bidders that:

> Unlike [an earlier sale in November 2014], which was undertaken to generate the best price with sufficient cash proceeds to pay off Condor's secured lenders, **the objective of this sale is to obtain the best price to maximize the net present value to Condor and its sole shareholder, Stephen Baron.**

(Campbell Decl. Ex. 5, at 1.)

In late March, after one "cash and carry" bidder (to use the Receiver's preferred term) dropped out, the Receiver took the bidding down to two bidders. (Campbell Decl. ¶ 9, Ex. 6.) The first of the two bids, which was the highest bid both at that time and as of the date of this Motion, was made by a loan servicer (the "High Bidder") whom the Receiver had previously sought to bring in as a back-up servicer while he was in control of Condor's servicing arm.[2] (Campbell Decl. ¶ 10.) The fundamental reason the High Bidder's deal was and remains superior is because it forgoes an upfront payment, which would have to be steeply discounted, and allows a payout to be made over time while the Portfolio winds down. (Campbell Decl. ¶

---

[2] The Final Consent Judgment granted Mr. Baron certain negotiations rights and the right to suggest potential purchasers during the bidding process; and consistent with those rights, Mr. Baron has openly solicited the High Bidder with the Receiver's consent. (Campbell Decl. ¶ 7, Ex. 4, at 8-9.)

4

10, Ex. 6.) The second bid was from a subprime servicer notorious for luring unwitting customers into high interest personal loans by sending out loan agreements disguised as personal checks (the "Low April Bidder"). (Campbell Decl. ¶ 11, Ex. 7.)

On April 24, 2015, approximately eleven days before the end of the 120-day deadline to enter a binding letter of intent, the Receiver informed Mr. Baron's counsel that he had signed a letter of intent to sell the Portfolio to the Low April Bidder, which was the lower of the two bids then in contention. (Campbell Decl. ¶ 13, Ex. 9.) The decision to go with the Low April Bidder would have resulted in a loss (when compared to the High Bidder) of between ▓▓▓ ▓▓▓ in value to the estate based on the Receiver's own valuation. (Campbell Decl. ¶ 12, Ex. 8.) Therefore, Mr. Baron promptly vetoed the Low April Bidder in a letter dated April 29, 2015. (Campbell Decl. ¶ 14, Ex. 10.) In substance, Mr. Baron observed:

> ... this is a purely financial decision made in very difficult circumstances based on facts that we know today. For example, the receiver has not provided Mr. Baron with any updated financial analyses to explain the abrupt decision to move forward with the [Low April Bidder] instead of the [High Bidder]. Similarly, the Department, which has an inexhaustible supply of vetoes, may not approve the sale to [the Low April Bidder] or [the High Bidder]. However, because the veto process has been structured such that Mr. Baron must use his single veto without knowing whether the Department has approved the purchaser (a Hobson's choice that is not required by the Final Consent Judgment) it may be the case that this veto will have been wasted.

(Campbell Decl. Ex. 10, at 2.)

Under the terms of the Final Consent Judgment, Mr. Baron's veto started a new sixty day period to enter a binding Letter of Intent. Accordingly, the Receiver re-opened the bidding on May 5, 2015 by sending a letter to potential bidders informing them of the veto and soliciting new bids. (Campbell Decl. Ex. 11.) Once again, the Receiver's letter to potential bidders made it clear that:

> The objective of this sale is to **obtain the best price to maximize the net present value to Condor and its sole shareholder, Stephen Baron while complying with all requirements set forth in the** [Judgment].

(Campbell Decl. Ex. 11, at 1.)

After soliciting new buyers with his letter, the Receiver promptly narrowed the field to four bidders, one of which was a new bid from the High Bidder,[3] and another of which was new bid by the Low April Bidder improved by approximately ▓▓▓ Campbell Decl. ¶ 17.) The new bid from the High Bidder became substantially less valuable than its prior bid because, in the intervening months, the Receiver had negotiated and demanded certain changes in the structure from the High Bidder's earlier bid that had the effect of transferring more money away from the Condor estate to the High Bidder. (Campbell Decl. ¶ 18.) Naturally, because the Receiver's demands benefitted the High Bidder (albeit at Condor's expense), the High Bidder readily agreed to these demands. (Campbell Decl. ¶ 18.) In any event, though the Receiver's modifications to the High Bidder's deal structure reduced its net present value to the estate, it remained the highest bidder as of June 1, 2015, according to the Receiver's own analysis of the final four bidders. The Receiver's June 1 net present valuations for the final four bidders were, in ascending order:



---

[3] To be clear: the Receiver has consistently accepted bids from the High Bidder and acknowledged that the deal it proposed is not prohibited by the Final Consent Judgment. (Campbell Decl. ¶ 20.) The Receiver and his counsel repeatedly stated that the Receiver was he is "evaluating" bids from the High Bidder in previous communications to Mr. Baron's counsel on February 13, February 26, March 24, March 27, April 3, June 2, June 4, and June 5. (Campbell Decl. ¶ 20.) On some occasions, the High Bidder was "dual tracked" with the cash and carry bid. In fact, on his own initiative, the Receiver submitted the High Bidder's proposal, along with a detailed outline of restrictions that ensured the deal comported with the Final Consent Judgment, to plaintiff on April 3, 2015. (Campbell Decl. Ex. 13.)



(Campbell Decl. Ex. 12.)

In the week of June 8, the Receiver narrowed the bidding again to the Low June Bidder and the High Bidder, and advised defendants that he would make a decision early the week of June 15. (Campbell Decl. ¶ 21.) At that time, the Receiver observed that the High Bidder "should be the most value to Stephen. I don't think anybody in their right mind could argue with that." (Campbell Decl. ¶ 21.) On June 12, the Receiver distributed a new comparison of the High Bidder and the Low June Bidder, valuing them at ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ (Campbell Decl. Ex. 14.) On top of the certain loss to Condor of ■■■■ there is an additional loss of opportunity for upside that is being transferred to the Low June Bidder: using the Receiver's own net present value analysis of ■■■ would appear that the Low June Bidder stands to make ■■■■■ putting its internal rate of return of approximately ■■ (Campbell Decl. ¶19.) Based on the cash flow projections, the Low June Bidder will have a return of capital within 11 months. (Campbell Decl. ¶19.) That value is lost to Condor and Mr. Baron for no apparent reason.

On Monday June 15, the Receiver announced that he was entering into a binding letter of intent with the Low June Bidder. (Campbell Decl. ¶22, Ex. 15.) The Receiver acknowledged he opted for the lowest bidder and, with respect to the High Bidder, observed:

> … While the [High Bidder] transaction was further amended and updated by the [High Bidder], Baron, and the Receiver, since February 2015, the fundamental structure whereby Condor would

---

[4] This is the Receiver's estimate of the net present value of the Low June Bidder's proposal.

[5] This is the Receiver's estimate of the net present value of the High Bidder's proposal.

> retain 100% of the risk of the portfolio's future performance remains unchanged. With the retention of all of the economic benefit and risks from the portfolio, the [High Bidder] transaction would likely offer significantly more economic value (estimated ▇▇▇▇▇▇▇▇ based on one set of assumptions and projections), but is contingent and speculative because the loan portfolio would have to meet certain performance metrics over the next 4 to 5 years.

(Campbell Decl. Ex. 15.)

When reviewing the Receiver's rationale for taking the Low June Bid, it is important to note that the person whom the Receiver is presumably protecting from the "speculative" risk is Condor's "sole shareholder, Stephen Baron," and that Mr. Baron was (and remains) willing to accept any such imagined risk. It also bears noting that the "speculative risk" here arose when Condor made the underlying loans in the first instance. Indeed, it is the same risk the Low June Bidder has calculated it is willing to take in contemplation of a ▇▇ rate of return.

## ARGUMENT

In this application, Mr. Baron seeks an Order prohibiting the Receiver from moving forward on a transaction that violates the Receiver's fiduciary duty by selling the portfolio to the lowest bidder. To obtain an injunction, a movant must demonstrate irreparable harm in the absence of an injunction and either: (i) a likelihood of success on the merits; or (ii) sufficiently serious questions going to the merits to make them fair grounds for litigation and a balance of hardships tipping decidedly in the movant's favor. *See Green Party v. N.Y. State Bd. of Elections*, 389 F.3d 411, 418 (2d Cir. 2004); *Tom Doherty Assocs. v. Saban Entm't*, 60 F.3d 27, 34 (2d Cir. 1995). As set forth below, the Receiver's execution of the Letter of Intent with the Low June Bidder, and the circumstances now before the Court, satisfy all of those requirements.

I. **MR. BARON IS LIKELY TO SUCCEED ON THE MERITS OF HIS CLAIM THAT THE RECEIVER HAS BREACHED HIS FIDUCIARY DUTY TO CONDOR**

To obtain injunctive relief, a movant must show only that the "probability of his prevailing [on the merits] is better than fifty percent." *Eng v. Smith*, 849 F.2d 80, 82 (2d Cir. 1988) (internal quotations and citations omitted). By selecting the Low June Bidder, the Receiver has plainly violated his fiduciary duty to the estate under his control. It is well established in the Second Circuit that "[a] receiver, as an officer or arm of the court, is a trustee with the highest kind of fiduciary obligations" and owes "a duty of strict impartiality, of 'undivided loyalty,' to all persons interested in the receivership estate, and must not dilute that loyalty." *Phelan v. Middle States Oil Corp.*, 154 F.2d 978, 991 (2d Cir. 1946). The Receiver owes this duty, not to the party appointing the Receiver, but to "preserve and protect the property for the benefit of all persons interested in the estate." *Bank of Tokyo Trust Co. v. Urban Food Malls*, 229 A.D.2d 14, 30 (1st Dep't 1996). As a fiduciary, the Receiver must "endeavor to realize the largest possible amount for assets of the estate." *Golden Pacific Bancorp. v. F.D.I.C.*, 375 F.3d 196, 201 (2d Cir. 2004); *see also Jackson v. Smith*, 254 U.S. 586, 588 (1921) (The receiver "had, as receiver, the affirmative duty to endeavor to realize the largest possible amount from the ... note."). In the context of the Portfolio sale, this fiduciary duty obligates the Receiver (as it would any fiduciary)[6] to select the bid that will provide the most value to the estate.

In fact, the Receiver's duty to maximize the assets of the estate is consistent with his duties under both the Preliminary Injunction Order and the Final Consent Judgment. Under the

---

[6] When selling the primary assets of a company, fiduciaries in other contexts likewise have a duty to pick the bid "most likely to offer the best value." *See e.g. Paramount Commc'ns Inc. v. QVC Network Inc.*, 637 A.2d 34, 45 (Del. 1993).

9

Preliminary Injunction Order, the Receiver is mandated to "Conserve, hold, and manage all assets of Condor, and perform all acts necessary or advisable to preserve their value." (Campbell Decl. Ex. 3.) The Final Consent Judgment, which incorporates the Preliminary Injunction Order, supplements these duties by requiring the Receiver to sell the Portfolio in a structure that ensures Mr. Baron shall exercise no "direct or indirect" influence over servicing the loans, and that the purchaser be Independent of Mr. Baron. (Campbell Decl. Ex. 4.)

Thus, with respect to the sale of the Portfolio, the Receiver's duties as a fiduciary and his specific obligations under the Final Consent Judgment, require that the Receiver shall (i) sell the Portfolio, (ii) to the highest Independent bidder, (iii) in a structure that ensures Mr. Baron shall exercise no direct or indirect influence over servicing of the Portfolio. Where, as here, there are two bids from purchasers Independent of Mr. Baron, with structures where Mr. Baron can exercise no direct or indirect influence over loan servicing, the Receiver must choose the one that provides the highest value. The Receiver has failed that standard.

As the Receiver has also stated himself, in selling the Portfolio there is no other "stakeholder" besides Mr. Baron, and the Receiver has an obligation to maximize the return of the estate for the benefit of Mr. Baron. Even if Mr. Baron advocates for the High Bidder based on his own self-interest, if that deal yields the highest return and comports with the Final Consent Judgment, the Receiver is bound by his fiduciary duty to accept the bid form the High Bidder. His refusal to do so constitutes a breach of that duty.

## II. THERE IS NO EXCUSE FOR THE RECEIVER'S BREACH OF FIDUCIARY DUTY

The Receiver has consistently chosen the lowest bid possible in derogation of his fiduciary duties, the Preliminary Injunction Order, and his own stated goal for the sale of the Portfolio. The Receiver has offered, by way of explanation for his choices, that:

> The decision to select the Buyer was based on the terms of the Final Consent Judgment, which included: (a) the economic value to Condor; (b) the requirement that the sale be structured to ensure that Stephen Baron ("Baron") shall exercise no influence, directly or indirectly over the servicing of the loans; and (c) the sale was structured to provide back-end upside to Condor should the portfolio perform well over the next 4 to 5 years.

(Campbell Decl. Ex. 15.) The Final Consent Judgment requires the Receiver to observe the first two requirements in that list, but the Receiver invented out of nothing the third one: that "the sale was structured to provide back-end upside to Condor".[7] Even if it were a relevant consideration, it is undisputed that the Low June Bidder will provide ▮ less in "back-end" upside to Condor and Mr. Baron, while yielding to the Low June Bidder approximately ▮ within 24 months, and an additional ▮ of the proceeds of the Portfolio thereafter.

The Receiver's preference for the Low June Bid, and his only real objection to the High Bidder, stems from the fact that the Low June Bid provides for a large upfront cash payment, while the High Bidder does not. But this structure is precisely what ensures that the High Bidder conserves the most value for Mr. Baron. In all events, the High Bidder's financial structure comports with the Final Consent Judgment, and is ▮ better than the bid the Receiver selected. So long as the bid's structure comports with the requirements of the Final Consent Judgment – and all agree that the High Bidder's does – the Receiver has no discretion to impose a ▮ loss on the estate to which he owes a fiduciary duty.

Mr. Baron has paid the price for his admitted misconduct and now the Receiver's job is to sell the Portfolio to the highest compliant bidder. This waste of the Portfolio's value as a

---

[7] Similarly, the Final Consent Judgment does not require that "Condor's residual ownership is less than fifty percent." (Campbell Decl. Ex. 15, at p. 1.) There is <u>no mention of residual ownership</u> in the Final Consent Judgment. That ▮ was invented by the Receiver.

11

result of the Receiver's decision serves no purpose in maximizing the value to Condor or Mr. Baron, and serves no purpose to the consumers. In all events, Mr. Baron is likely to succeed on the merits of his claim that the Receiver breached his fiduciary duty by signing a binding Letter of Intent with the Low June Bidder.

### III. MR. BARON WILL SUFFER IRREPARABLE HARM IF THE RECEIVER IS NOT ENJOINED FROM EXECUTING THE TRANSACTION CONTEMPLATED IN THE LETTER OF INTENT

Irreparable harm exists where, "but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Brenntag Intern. Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999). In the context of a transaction such as this, irreparable harm occurs where, as here, once an offer has been consummated, it becomes difficult, and sometimes virtually impossible, for a court to 'unscramble the eggs.'" *Consol. Gold Fields PLC v. Minorco, S.A.*, 871 F.2d 252, 261 (2d Cir. 1989).

The Receiver's intention to proceed with the Low June Bid constitutes irreparable harm to the Condor estate and Mr. Baron. As shown above, under the Receiver's own analysis the High Bidder transaction is worth a minimum of ▮▮▮▮▮▮▮▮▮ more than any other bid. (Campbell Decl. ¶21, Ex. 14.) Moreover, now that the binding Letter of Intent is signed, Condor cannot back out of the deal without significant economic risk, given that Condor must pay the Low June Bidder's due diligence expenses, and significant litigation risk. Further irreparable harm would occur if the Receiver is allowed to close the Low June Bidder transaction.

Finally, Mr. Baron's rights under the Final Consent Judgment to participate in the sale and for the Receiver to preserve the assets of Condor, which he bargained for and the Receiver discarded, would be unrecoverable if the Receiver were allowed to disregard his fiduciary duties.

12

## IV. THE BALANCE OF HARDSHIPS FAVORS RESTRAINING THE RECEIVER FROM SELLING THE PORTFOLIO TO THE LOW JUNE BIDDER AND MAINTAINING THE *STATUS QUO*

Enjoining the Receiver from proceeding with the Low June Bidder will maintain the *status quo* at the cost of no hardship to the Receiver or the estate. Neither the plaintiff (who has already been paid), nor the consumers (who have already been given restitution with interest), nor the Receiver will suffer any hardship at all if the Receiver is enjoined. Indeed, with respect to the Receiver, the only loss he would suffer would be in his time, which is already well compensated by the estate. Therefore, the balance of hardships tips decidedly in favor of restraining the Receiver.

## CONCLUSION

For all the foregoing reasons, Defendant Stephen Baron respectfully requests that the Court issue an order restraining Denis O'Connor of Alix Partners LLC (the "Receiver") as the receiver for Condor Capital Corporation ("Condor"), from selling the assets of Condor as contemplated in the Letter of Intent dated June 12, 2015, together with such other relief to said Defendant as this Court may deem just and proper.

Dated: New York, NY
       June 29, 2015

                                  SCHLAM STONE & DOLAN LLP

                              By: _____
                              Richard H. Dolan (RD-2212)
                              26 Broadway
                              New York, N.Y. 10004
                              (212) 344-5400 (Telephone)
                              (212) 344-7677 (Facsimile)
                              E-Mail: rdolan@schlamstone.com

                              *Special Counsel for Defendant*
                              *Stephen Baron*