USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/5/15

**NIEHAUS LLP**

Paul R. Niehaus
Tel: (212) 631-0223
Fax: (212) 624-0223
E-mail: pniehaus@niehausllp.com

750 Lexington Avenue
25th Floor
New York, NY 10022

November 4, 2015

*[Handwritten annotations: "11/17/2015" "Absolutely not. The Receiver remains in full charge. Mr. Baron is not to complain about Mr. Baron's problems he has repeatedly delayed" — signed]*

**COURTESY COPY**

By ECF
The Honorable Colleen McMahon
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *Lawsky v. Condor Capital Corp. and Stephen Baron*
U.S. Dist. Ct., S.D.N.Y. No 14-civ-2873(CM) [handwritten: 2863]

Your Honor:

## MEMO ENDORSED

I represent defendant Stephen Baron as special conflicts counsel in the above-referenced matter.[1]

I write to address the letter dated October 30, 2015 to the Court (the "October 30 Letter") from Receiver Denis O'Connor (the "Receiver"). Among other things, I write to alert the Court as to how the circumstances of the proposed sale of Condor Capital Corp.'s ("Condor") remaining loan portfolio (the "Final Sale") to a hedge fund buyer (the "Proposed Buyer"), have changed significantly since it was initially presented to this Court by the Receiver. Most egregiously, by repeatedly postponing the Final Sale, the Proposed Buyer has effectively achieved a transfer of $29 million dollars *in cash* from Condor to the Proposed Buyer.

### The Proposed Final Sale

While noting that the Final Sale is still being negotiated, the October 30 Letter fails to inform the Court how the economics of the proposed Final Sale have substantially changed since its inception, or to provide the Court with any revised analysis. As originally proposed by the Receiver and presented to the Court in June, the Proposed Buyer was to pay 47 cents on the dollar for loans with a face value of approximately $157 million as of April 30, 2015. Since that time, however, the portfolio has generated a consistent stream of cash, and numerous loans have

---

[1] A Substitution of Attorney replacing Schlam, Stone & Dolan LLP with Niehaus LLP has been filed simultaneously with this correspondence.

been closed out or paid off. As set forth in the most recent draft transaction documents provided to Condor and Mr. Baron, the currently-proposed deal calls for the Proposed Buyer to pay 47 cents on the dollar for loans with a face value of approximately $123 million, *along with* the $29 million in cash generated by the portfolio since May 31, 2015. This is patently unfair to Condor and to Mr. Baron, a pure windfall to the Proposed Buyer of about $15.3 million (53% of $29 million), and a deal that no rational arms-length seller with a place at the negotiating table would ever contemplate. It is also extremely disturbing that the Receiver has not provided the Court with an updated financial analysis showing these vastly revised deal terms.

Moreover, it is now obvious that the Proposed Buyer is unwilling to proceed with the Final Sale within any reasonable time frame, a fact quietly ignored by the October 30 Letter. The initial Letter of Intent ("LOI") called for a two-week due diligence period and for a closing approximately one month after the LOI was signed. It has now been four and a half months since the initial LOI was signed, and no fewer than eight revised deadlines have come and gone.[2] The most recent LOI, dated September 22, 2015, called for the transaction to close on October 28, 2015. In fact, the exclusivity period for the Proposed Buyer to negotiate with the Receiver expired almost two weeks ago, at 11:59 p.m. on October 16, 2015.

In his letter of October 2, 2015, counsel for the Receiver represented to the Court that the deal was in its "final phases," and would be closed by the end of October. The October 30 Letter ignores that earlier representation, and simply recycles the claim that the deal is in the "final stages of negotiation." Abandoning any firm dates, the letter merely states that the Receiver is "hopeful" of a signing "in the very near future." But the Receiver's hopes aside, there is no longer anything binding the Receiver to the Proposed Buyer. In light of the Proposed Buyer's extreme reluctance to close the deal, and in light of the materially changed terms of the proposed deal, it is more than time for the Receiver to close this failed chapter, and to resume negotiations with previous bidders for the portfolio.

First Associates Loan Servicing, LLC

The October 30 Letter also informed the Court that as of September 10, 2015, servicing of Condor's remaining loan portfolio was handed over to First Associates Loan Servicing, LLC ("FALS"). The letter further acknowledges that FALS is the same entity that would be servicing the portfolio under the proposed Final Sale, and is the same entity that entered an earlier bid to purchase the portfolio. In other

---

[2]  Even if the blame for any earlier delay were placed entirely on Mr. Baron's shoulders (a position with which we disagree), almost two and a half months have now passed since the Second Circuit declined to enjoin the Final Sale. During that time, millions of dollars' worth of loans have been converted to cash. And during that same time – despite no further actions by Mr. Baron – the "breakup fee" in the event of a failed transaction has risen from $225,000 to $385,000.

words, all of the constituent pieces of the deal the Receiver rejected in order to make a deal with the Proposed Buyer are in place, at the same time the deal to sell to the Proposed Buyer has gotten substantially worse for the estate.

Given these circumstances, we respectfully request that the Court instruct the Receiver to exercise his right under the now-lapsed LOI to end the interminable negotiations with the Proposed Purchaser, and to complete the sale of the portfolio as rapidly as possible.

Ongoing Operations and the End of the Receivership

According to the October 30 Letter, the Receiver's fees since August 8 were more than $550,000. However, with the transfer of loan servicing duties to FALS and the glacial pace of negotiations, it is unclear what the Receiver and his team could be doing to warrant those fees. Certainly the remediation effort does not require that level of drain on the estate's resources: only 270 accounts out of over 80,000 accounts reviewed remain to be processed, with an estimated remediation amount of $200,000, and 1,500 accounts are under "additional" review, with a possible remediation amount of $40,000. While each customer is, of course, entitled to a return of funds, the total amount at issue represents approximately *half of a single month's professional fees* for the Receiver and his attorneys.

Section II.D of the Final Consent Judgment calls for the Department of Financial Services to select a Third-Party Administrator "to manage the completion of the restitution process following the termination of the Receivership." Plainly, the parties and the Court contemplated from the beginning that the Receiver would hand over the restitution process prior to its completion, and the Receiver should not continue to incur massive expenses administering these accounts. Yet, the Department of Financial Services has not selected a Third Party Administrator for Mr. Baron to appoint, and the Receiver has no evident incentive to press the Department for progress on that point.

We therefore respectfully request the Court to instruct the Department to select a Third-Party Administrator within 10 days, and the Receiver to turn over the administration of the payments as practicably as possible after that date.

Very truly yours,

Paul R. Niehaus