UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
BENJAMIN M. LAWSKY, Superintendent of          :
Financial Services of the State of New York,          :          Case No.: 14 Civ. 2863(CM)
                                                                          :
                                        Plaintiff,          :
                                                                          :
          -against-                                              :
                                                                          :
CONDOR CAPITAL CORPORATION and          :
STEPHEN BARON,                                           :
                                                                          :
                                        Defendants.          :
                                                                          :
          -and-                                                    :
                                                                          :
WELLS FARGO BANK, N.A., as Agent for          :
Certain Financial Institutions as Lenders,          :
                                                                          :
                                        Intervenor.          :
---------------------------------------------------------------X

## DEFENDANT STEPHEN BARON'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO RECUSE

**NIEHAUS LLP**
Paul R. Niehaus
750 Lexington Avenue, 25th Floor
New York, New York  10022
(212) 631-0223
*Special Counsel for Defendant Stephen Baron*

Dated:  November 23, 2015
          New York, New York

# **TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 1

ARGUMENT ................................................................................................................... 3

      I.   Judge McMahon Should Recuse Herself Because the  Appearance of Impartiality Has Been Compromised............................................................................................. 3

          A.   Legal Standard ................................................................................................. 3

          B.   The Appearance of Impartiality Has Been Compromised in the Instant Matter ................................................................. 5

CONCLUSION................................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

*Berger v. United States*, 255 U.S. 22 (1921) ................................................................. 4

*Chase Manhattan Bank v. Affiliated FM Ins. Co.*, 343 F.3d 120 (2d Cir. 2003) ........................... 4

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ..................................................... 10

*City of New York v. Exxon Corp.*, 683 F. Supp. 70 (S.D.N.Y. 1987) ............................................. 5

*Cox. v. Onondaga County Sheriff's Dep't.*, 760 F.3d 139 (2d Cir. 2014) ...................................... 3

*German v. Fed. Home Loan Mortg. Corp.*, 943 F. Supp. 370 (S.D.N.Y. 1996) ........................ 4, 5

*Ligon v. City of New York*, 736 F.3d 118 (2d Cir. 2013) .................................................... 3, 4, 5, 8

*Liteky v. United States*, 510 U.S. 540 (1994) ................................................................................. 4

*Nicodemus v. Chrysler Corp.*, 596 F.2d 152 (6th Cir. 1979) ...................................................... 8, 9

*S.E.C. v Byers*, 590 F. Supp. 2d 637 (S.D.N.Y. 2008) ............................................................ 9, 10

*S.E.C. v. Goren*, 272 F. Supp. 2d 202 (E.D.N.Y. 2003) .......................................................... 9, 10

*United States v. Pepper & Potter, Inc.*, 677 F. Supp. 123 (E.D.N.Y. 1988) ................................. 4

*United States v. Robin*, 553 F.2d 8 (2d Cir. 1977) (en banc) ........................................................ 5

*United States. v. Yousef*, 327 F.3d 56 (2d Cir. 2003) ................................................................. 3, 4

Defendant Stephen Baron ("Mr. Baron"), by and through his Special Counsel, Niehaus LLP, respectfully submits this Memorandum of Law in support of his motion to recuse the Honorable Colleen McMahon from further participation in the instant litigation.

## PRELIMINARY STATEMENT

The law governing recusal of judges in the District Courts of the United States emphasizes over and over that the standard for recusal is not *actual* partiality, but the *appearance* of partiality. To be clear, we emphasize that no portion of this motion rests on any argument that the Court's previous rulings were "unfair," or evidenced any partiality. While Mr. Baron may respectfully disagree with those rulings, they are simply part of the litigation process, and form no basis of our motion.

The basis of the motion is found in on-the-record remarks made by the Court, and in endorsements written on letter applications. These remarks and endorsements could lead an objective observer to conclude that the appearance of impartiality has been compromised in this matter. The Court's statements go beyond ordinary expressions of opinion, and create the impression – if not the reality – that the Court has pre-judged the merits of an anticipated application by the Receiver in this action, and that the Court will not "listen to anything Stephen Baron has to say." In order to preserve the appearance of impartiality, recusal is required.

## STATEMENT OF FACTS

This matter was commenced on April 23, 2014 by the New York State Department of Financial Services ("DFS") against Condor Capital Corporation ("Condor") and Mr. Baron. (Niehaus Aff. ¶ 3.) On May 12, 2014, a preliminary injunction hearing was held before the Court, resulting in a preliminary injunction being issued the following day. (Niehaus Aff. ¶ 4.) On July 31, 2014, the Court heard oral argument on Mr. Baron's motion to modify the

preliminary injunction order.  (Niehaus Aff. ¶ 5.)  At that argument, the Court stated in reference to the May 12, 2014 hearing, "I certainly didn't believe [Mr. Baron].  I thought he was either the stupidest man who ever got on the stand or a liar."  (Niehaus Aff. Ex. A, 5/12/14 Transcript p. 4.)  The Court continued, "Why should I listen to anything Stephen Baron has to say about this company. . . . He is a liar."  (Id., p. 6.)

On December 22, 2014, the parties entered into a Final Consent Judgment (the "Consent Judgment"), pursuant to which the remaining loans in Condor's loan portfolio were to be sold off.  (Niehaus Aff. Ex. B, Consent Judgment § 1.B.)  Following the sale of the remaining loans, the proceeds from the sale and Condor's remaining assets were to be distributed at Condor's and Mr. Baron's discretion.  (Id. § 1.F.)  As the sole shareholder of Condor, Mr. Baron would receive the entirety of this distribution.  (Niehaus Aff. ¶ 6.)

On June 15, 2015, the Receiver filed a letter with the Court, informing the Court that he had entered into a Letter of Intent with a third-party buyer to sell Condor's remaining loans. (Niehaus Aff. Ex. C.)  The letter stated that the purchase price for the remaining portfolio would be "materially lower than the 92% achieved for the First Sale," but did not provide any estimate of how much lower the purchase price would be, or how much value would be realized by Condor.  The same day the letter was received by the Court, the Court wrote and filed an endorsement on the letter which read: "Too bad Mr. Baron did not agree to the earlier proposed Second Sale – he will have to live with this one if DFS approves."  (Id.)

On November 5, 2015, counsel for Mr. Baron filed a letter with the Court, objecting to the proposed final sale.  (Niehaus Aff. Ex. D.)  The letter noted that the proposed sale had "changed significantly since it was initially presented to the Court by the Receiver," and pointed out the numerous ways in which the then-current deal differed from the deal presented to the

Court in June.  Primary among these "materially changed terms" was the fact that the deal now provided for the purchaser to receive $29 million in cash, for which it would pay just $0.47 per dollar.  In response, counsel for the Receiver filed a letter first admitting that the purchaser would receive this cash windfall, and then disingenuously claiming that "the most important economics of the proposed sale . . . will not change . . . ."  (Niehaus Aff. Ex. E.)  The Court endorsed the letter from Receiver's counsel with the statement, "Fear not – I will not allow Mr. Baron to upset this deal."  (Id.)

At 11:06 a.m. on November 9, 2015, counsel for Mr. Baron received an electronic notification that the Court had authorized the Receiver's request for fees for himself and his counsel, dated November 6, 2015.  (Niehaus Aff. Ex. F.)  At 12:06 p.m. that same day, counsel for Mr. Baron received an e-mail from the Receiver, attaching the request for fees that had already been approved by the Court.  (Niehaus Aff. Ex. G.)

## ARGUMENT

**I.      Judge McMahon Should Recuse Herself Because the Appearance of Impartiality Has Been Compromised**

A.      Legal Standard

Title 28, United States Code, section 455(a) provides:

> any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

The goal of section 455(a) is to avoid not only partiality, but also the *appearance* of partiality. *Ligon v. City of New York*, 736 F.3d 118, 123 (2d Cir. 2013) (emphasis added).  Under the statute, recusal is required whenever "an objective, disinterested observer fully informed of the underlying facts, would entertain significant doubt that justice would be done absent recusal." *Cox v. Onondaga County Sheriff's Dep't.*, 760 F.3d 139, 150 (2d Cir. 2014), citing *United*

*States. v. Yousef*, 327 F.3d 56, 169 (2d Cir. 2003). Phrased differently, the pertinent trigger for recusal is the "appearance of partiality," or where a reasonable observer would conclude that the appearance of impartiality had been compromised. *Cox*, 760 F.3d at 150, citing *Chase Manhattan Bank v. Affiliated FM Ins. Co.*, 343 F.3d 120, 128-30 (2d Cir. 2003). *See also, Ligon*, 736 F.3d at 124, 125. Or, as the Supreme court has held, "[w]hat matters is not the reality of bias or prejudice but its appearance." *Liteky v. United States*, 510 U.S. 540, 548 (1994). *See also, Berger v. United States*, 255 U.S. 22, 35-36 (1921) ("Tribunals of the country shall not only be impartial in the controversies submitted to them but shall give assurance that they are impartial.").

While opinions formed during the course of judicial proceedings do not usually constitute a basis for recusal, statements made on the basis of such opinions may form the basis for recusal if they display a deep-seated favoritism or antagonism that would make fair judgment impossible. *Liteky*, 510 U.S. at 555. Thus, where an objective observer would conclude that the court's impartiality might reasonably be questioned, the judge should disqualify himself despite his subjective belief in his impartiality. *German v. Fed. Home Loan Mortg. Corp.*, 943 F. Supp. 370, 373 (S.D.N.Y. 1996). Accordingly, recusal may be required even where the judge is confident that she could preside impartially. *Id.* at 374, citing *United States v. Pepper & Potter, Inc.*, 677 F. Supp. 123, 126 (E.D.N.Y. 1988).

Avoiding the appearance of impartiality is such an important goal that the Circuit courts not infrequently reassign matters to different trial judges upon remand, both upon motion and *sua sponte*. The Second Circuit, sitting *en banc*, has noted that circumstances exist "where both for the judge's sake and the appearance of justice, an assignment to a different judge is salutary and in the public interest, especially as it minimizes even a suspicion of partiality." *Ligon*, 736

- 4 -

F.3d at 123, citing *United States v. Robin*, 553 F.2d 8, 9-10 (2d Cir. 1977) (en banc).  The *Ligon* panel further noted that "[r]eassigning a case to a different district judge, while not an everyday occurrence, is not unusual in this Circuit."  *Ligon*, 736 F.2d at 128. (citations omitted).  Indeed, "reassignment is simply a mechanism that allows the courts to ensure that cases are decided by judges without even an *appearance* of impartiality.  *Id*. at 129 (emphasis in original).

Finally, "if the question of whether § 455(a) requires disqualification is a close one, the balance tips in favor of recusal."  *Ligon*, 736 F.3d at 124 (citations omitted); *German*, 943 F. Supp. at 373; *City of New York v. Exxon Corp.*, 683 F. Supp. 70, 72 (S.D.N.Y. 1987).

Applying these standards in *Ligon*, the Second Circuit held that Judge Scheindlin should be disqualified under section 455(a).  The court held that the "appearance of partiality stems in the first instance from comments made by Judge Scheindlin that a reasonable observer could interpret as intimating her views on the merits of a case that had yet to be filed . . . "  *Ligon*, 736 F.2d at 124.  In essence, Judge Scheindlin intimated to attorneys seeking certain documents that they would likely obtain those documents if the issue were placed before her.  *Id.*

B.     The Appearance of Impartiality Has Been Compromised in the Instant Matter

Through courtroom remarks and endorsements on letter applications, the Court has created the appearance that it will approve any deal to sell Condor's remaining loan portfolio that the Receiver presents to the Court.  In other words, the Court has created the appearance that it has pre-judged a motion not yet before it.

The foundation for the appearance of partiality was laid during an oral argument on July 31, 2014.  Referring to a previously-held preliminary injunction hearing, the Court stated,

> *I certainly didn't believe [Mr. Baron].  I thought he was either the stupidest man who ever got on the stand or a liar.*

(Niehaus Aff. Ex. A, 5/12/14 Transcript p. 4.)  The Court continued,

- 5 -

> *Why should I listen to anything Stephen Baron has to say about this company. . . . He is a liar.  So I don't believe him.*

(*Id.* p. 6.)  This statement went well beyond the permitted expression of an opinion, and beyond the Court's legitimate responsibility to assess the credibility of witnesses in general.  A reasonable third party observe could conclude that even if the Court had been justified in determining that Mr. Baron's testimony was not credible in connection with the preliminary injunction motion in May 2014, that the Court has adjudged the Defendant to be a liar in all contexts and for all purposes in this case.  In other words, a reasonable objective third party could interpret the Court's remarks to indicate that *in the future*, the Court would assume that Mr. Baron was not telling the truth, and that in deciding motions and issues in the case, would not "listen to anything Stephen Baron has to say."

The appearance of partiality on the issue of the sale of the loan portfolio began to coalesce with a memo endorsement by the Court on a letter from the Receiver dated June 15, 2015.  In that letter, the Receiver informed the Court for the first time that it had entered into a Letter of Intent with a third-party buyer to sell Condor's remaining loans.  While admitting in the letter that the purchase price for the remaining portfolio would be "materially lower than the 92% achieved for the First Sale," the June 15, 2015 letter failed to provide any sense whatsoever of how much lower the purchase price would be, or how much value would be realized by Condor.  (Niehaus Aff. Ex. C.)  There is simply no way the Court could determine from the contents of the Receiver's letter whether the prospective sale would be at 82% of face value, 50% of face value, or 20% of face value.  Thus, the letter provided no basis to determine whether the proposed deal was in any way appropriate, fair, or consistent with the Receiver's fiduciary duties.

- 6 -

Nevertheless, the same day the letter was received by the Court, and unprompted by any request in the letter, the Court wrote and filed an endorsement on the letter which read:

> *Too bad Mr. Baron did not agree to the earlier proposed Second Sale – he will have to live with this one if DFS approves.*

(*Id.*)  This spontaneous commentary by the Court gives the impression that a) the deal would be approved by the Court regardless of the details contained therein, and b) the Court desires to see Mr. Baron get stuck with a deal not to his liking.  Certainly it gives the appearance that the Court has pre-determined that so long as DFS approves the deal, the Court would rubber-stamp it, without an independent review.

The appearance of impartially on the issue of the sale was firmly fixed in early November of this year.  On November 4, 2015, counsel for Mr. Baron filed a letter with the Court, objecting to the proposed final sale on numerous grounds.  The organizing principle of the letter was that the proposed sale had "changed significantly since it was initially presented to the Court by the Receiver."   The letter then pointed out the numerous ways in which the then-current deal differed from the deal presented to the Court in June.  Primary among these "materially changed terms" was the fact that the deal now provided for the purchaser to receive $29 million in cash, for which it would pay just $0.47 per dollar – meaning that the buyer would pay approximately $15 million in cash, and receive $29 million in return.  (Niehaus Aff. Ex. D.)  Replying the next day by letter, counsel for the Receiver first admitted that the purchaser would, in fact, receive this cash windfall.  Counsel then remarkably claimed that "the most important economics of the proposed sale . . . will not change . . . ."  (Niehaus Aff. Ex. E.)

In response, the Court endorsed the Receiver's letter with the statement,

> *Fear not – I will not allow Mr. Baron to upset this deal.*

(*Id.*)  Thus, after being informed in detail why the deal was vastly different from the deal presented in June, the Court again affirmed that it would approve whatever deal was presented. "Fear not" can only be interpreted to mean that the Receiver should not worry that the deal – as yet unpresented to the Court – would be rejected by the Court for any reason proffered by Mr. Baron.  The endorsement can only give the appearance that (despite the Receiver's acknowledgement that the proposed deal would provide and unprecedented and unexplained multi-million dollar windfall to the buyer directly out of Mr. Baron's pocket), the Court had pre-determined, without having been presented with the full facts, that it would approve the deal without further consideration.  Indeed, taken together with the June 15 endorsement, the appearance is that the Court will be quite pleased to see an unfavorable result for Mr. Baron.

This is precisely the appearance of partiality that required recusal in *Ligon*. There, the "appearance of partiality stem[med] in the first instance from comments made by Judge Scheindlin that a reasonable observer could interpret as intimating her views on the merits of a case that had yet to be filed . . ."  *Ligon*, 736 F.2d at 124.  Substitute the word "motion" for "case," and the reasoning is identical.  The Court's June 15, 2015 endorsement ("too bad . . . he will have to live with this one"), and particularly its November 5, 2015 endorsement ("fear not") may readily be interpreted by a reasonable observer as intimating the Court's views on the merits of a motion not yet filed.

The Court's comments at the July 21, 2014 hearing also closely resemble remarks requiring recusal in *Nicodemus v. Chrysler Corp.*, 596 F.2d 152 (6th Cir. 1979).  There, also in connection with a preliminary injunction hearing, the district court judge stated in part, "I don't believe anything that anybody from Chrysler tells me because there is nothing in the record that is before me and in my experience in dealing with this case that gives me reason to believe that

they are worthy of credence by anybody." *Id.* at 155.  The Sixth Circuit ordered the judge's

recusal, reasoning that the appearance of impartiality had been destroyed.  *Id.*  The court found

"equally troublesome" the fact that the remarks of the sitting judge went beyond suggesting bias

at the specific hearing in question.  The judge's statements "place[d] in doubt his ability to

conduct unbiased future proceedings in regard to this matter." *Id.* at 156.  The Court's comment,

"[w]hy should I listen to anything Stephen Baron has to say . . . [h]e is a liar" also goes beyond

the mere expression of opinion, and creates the appearance that the Court may not be able to

conduct unbiased future proceedings.

Coupling this Court's statement that it would not listen to "anything Mr. Baron has to

say," with its endorsements "too bad . . . Mr. Baron will have to live with this one," and "[f]ear

not – I will not allow Mr. Baron to upset this deal" would give any reasonable observer grounds

to conclude that the appearance of impartiality has been compromised in this matter.

Other actions by the Court, insufficient on their own to require recusal, support the

conclusion that the appearance of impartiality has been compromised in this matter.  This matter

does not resemble the typical receivership where a receiver is acting on behalf of numerous

stakeholders and creditors.  In the unique circumstances of this case, Mr. Baron is the sole

recipient of liquidation proceeds, and every penny spent by the Receiver comes directly out of

Mr. Baron's pocket.  Mr. Baron is therefore especially and particularly concerned about the fees

being paid to the Receiver and his advisors, and has expressed these concerns to the Court on

numerous occasions.  However, despite Mr. Baron's objections, and despite clear authority

requiring the Court to "scrutinize" the Receiver's fees, the Court has created the appearance that

it will automatically approve the Receiver's fee requests (and those of his counsel) without any

review whatsoever. *See S.E.C. v Byers*, 590 F. Supp. 2d 637, 645 (S.D.N.Y. 2008) ("[c]ourts

should take particular care to scrutinize fee applications 'to avoid even the appearance' of a windfall.") citing *S.E.C. v. Goren*, 272 F. Supp. 2d 202, 206 (E.D.N.Y. 2003), and *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 469 (2d Cir. 1974).  On at least one occasion, the Court has authorized payment of hundreds of thousands of dollars in fees before counsel for Mr. Baron has even received a copy of the request.  Again, the issue is not whether the fees are justified (although we believe they are not), the issue is whether a reasonable person would believe that the appearance of impartiality has been compromised.  By authorizing the Receiver to transfer funds directly from Mr. Baron's pocket into his own, automatically and without scrutiny, the Court has added to the appearance of partiality.

We again expressly note that Mr. Baron is *not* seeking recusal based on the substance of any rulings made by the Court to date.  While Mr. Baron may disagree with some of those rulings, it is not Mr. Baron's position that any previous ruling was the result of bias.  Mr. Baron's motion rests solely on the record that from the inception of the case until today, the Court has made various statements which, taken as a whole, compromise the appearance of impartiality with respect to anticipated motions and issues yet to be decided in this case.

## CONCLUSION

To reiterate, Mr. Baron is not accusing the Court of actual bias or partiality.  However, as courts of this Circuit have unanimously recognized, the purpose of section 455(a) is to prevent even the *appearance* of partiality from tainting judicial proceedings in the courts of the United States.  Where, like here, an objective observer might reasonably question whether the appearance of partiality has been compromised, the sitting judge is bound to recuse himself or herself from further proceedings.  We therefore respectfully request that Judge McMahon recuse

herself from this matter, and that it be reassigned pursuant to Rule 16 of the Southern District's

Rules for the Division of Business Among District Judges.

Dated: November 23, 2015                    Respectfully Submitted,

Paul R. Niehaus
NIEHAUS LLP
750 Lexington Ave., 25th Floor
New York, New York  10022
(212) 631-0223
pniehaus@niehausllp.com

- 11 -